

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED
DEC 0 3 2001 JS
MICHAEL N. MILBY, CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FINLEY L. HILLIARD, KENNETH M. FARRAR, AND MILFORD, HILLIARD AND FARRAR, P.C. | § | H-01-4175 |
| vs. | § | C.A. NO. ____________ JURY DEMANDED |
| J. HOWARD MARSHALL, III, JACK W. LAWTER, JR., DIANNE W. LAWTER, LAWTER & LAWTER, L.L.P., AVI S. PERETZ, AND GABRIEL, HERMAN & PERETZ, L.L.P. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW, Plaintiffs, Finley L. Hilliard, Kenneth M. Farrar, and Milford, Hilliard and Farrar, P.C., complaining of Defendants, J. Howard Marshall, III, Jack W. Lawter, Jr., Dianne W. Lawter, Lawter & Lawter, L.L.P., Avi S. Peretz, and Gabriel, Herman & Peretz, L.L.P., and for cause of action respectfully shows the Court the following:

## PARTIES

1. Plaintiff, Finley L. Hilliard, is an individual residing in Lake Charles, Louisiana.

2. Plaintiff, Kenneth ("Ken") M. Farrar, is an individual residing in Lake Charles, Louisiana.

3. Plaintiff, Milford, Hilliard and Farrar, P.C., is a Louisiana professional corporation that is located in Lake Charles, Louisiana.

4.   Defendant, J. Howard Marshall, III ("Howard Jr."), is an individual residing in California who may be served by serving his duly appointed resident agent for service of process, Jack W. Lawter, Jr., at his place of employment, Lawter & Lawter, L.L.P., 700 Louisiana, Suite 2500, Houston, Texas 77002-2725[1].

5.   Defendant, Jack W. Lawter, Jr., ("Jack Lawter") is an individual residing in Harris County, Texas, who may be served at his place of employment, Lawter & Lawter, L.L.P., 700 Louisiana, Suite 2500, Houston, Texas 77002-2725.

6.   Defendant, Dianne W. Lawter, is an individual residing in Harris County, Texas, who may be served at her place of employment, Lawter & Lawter, L.L.P., 700 Louisiana, Suite 2500, Houston, Texas 77002-2725.

7.   Defendant, Lawter & Lawter, L.L.P., is a Texas limited liability partnership that may be served by serving Jack W. Lawter, Jr., at his place of employment, Lawter & Lawter, L.L.P., 700 Louisiana, Suite 2500, Houston, Texas 77002-2725.

8.   Defendant, Avi S. Peretz, is an individual residing in California who may be served at 201 Wilshire Blvd., #101, Santa Monica, CA 90401.

---

[1] Jack W. Lawter, Jr., is the designated registered agent for J. Howard Marshall, III, pursuant to the settlement agreement upon which this lawsuit is based. A copy of the settlement agreement is attached to this pleading as Exhibit A. *See* paragraph 12.

9. Defendant, Gabriel, Herman & Peretz, L.L.P., is a California limited liability partnership that may be served by serving any of its former partners. Two former partners, Alan Gabriel and Dean Herman, may be served at their place of business, 1800 Century Park East, 5th Floor, Los Angeles, California 90067-1508. Alternatively, the third former partner, Avi Peretz, may be served at his place of business, 201 Wilshire Blvd., #101, Santa Monica, CA 90401.

**JURISDICTION AND VENUE**

10. This is a fraud and breach of contract case that involves complete diversity of citizenship[2]. 28 U.S.C. § 1332. It is based on settlement agreement that was flagrantly breach by Defendants. The amount in controversy exceeds the Court's minimum jurisdictional limits of $75,000. The settlement agreement was entered into in Harris County, Texas, by certain parties and their legal counsel in the probate case styled *In re J. Howard Marshall, II, Deceased;* Cause No. 276,815; In the Probate Court Number Two (2) of Harris County, Texas. The settlement agreement was breached in Harris

[2] Plaintiffs, Finley Hilliard and Kenneth Farrar, are citizens of Louisiana, and their accounting firm, Milford Hilliard and Farrar, which is also a plaintiff, is a Louisiana corporation. None of the defendants are Louisiana citizens. Jack Lawter and Diane Lawter are Texas citizens, and their law firm, Lawter & Lawter, L.L.P., is Texas limited liability partnership. The other two individual defendants, Avi Peretz and J. Howard Marshall, III, are citizens of California, and the final defendant, Gabriel, Herman & Peretz, was a California limited liability partnership when the events giving rise to this lawsuit occurred.

County, Texas. All parties to this lawsuit were parties to the settlement agreement.

## BACKGROUND

11. On December 29, 1974, J. Howard Marshall, II ("Mr. Marshall") gave his elder son, J. Howard Marshall, III ("Howard Jr.") one-half of his voting stock in Koch Industries, the largest privately-held oil company in the United States. The gift, which represented approximately 4% of all voting stock in Koch Industries, was a wedding present for Howard Jr. At the same time, Mr. Marshall gave an equal amount of stock to his younger son, Pierce Marshall.

12. For many years, Mr. Marshall had been instrumental in the operation of Koch Industries and he considered the stock to be the "crown jewels" of years of hard work and dedication. Mr. Marshall sat proudly on the board of directors of Koch Industries.

13. In late 1980, Howard Jr. joined forces with a dissident group of stockholders in Koch Industries who wanted to take the company public, remove the existing members of the board (including Mr. Marshall), and pay higher dividends to the shareholders. Howard Jr. threatened to vote his shares with the dissident group. Mr. Marshall was infuriated with Howard Jr.'s actions because Mr. Marshall wanted Koch's profits to be used for company expansion, as had been done in the past. Mr. Marshall viewed Howard Jr.'s actions as utter disloyalty.

14.     To quell the uprising and to prevent a possible recurrence of similar disloyalty in the future, Mr. Marshall bought back Howard Jr.'s gifted stock for $8,000,000. According to those who spoke with Mr. Marshall after these events, this act of disloyalty resulted in Howard Jr.'s total disinheritance. The disinheritance was also reflected in 13 subsequent testamentary documents[3] that were executed by Mr. Marshall over the remaining 15 years of his life. In all of these documents, Howard Jr. received nothing.

15.     On August 4, 1995, Mr. Marshall passed away.

16.     On December 20, 1995, Howard Jr., filed a lawsuit in the probate court where his father's estate was pending against a host of individuals and entities, including the Plaintiffs, Finley Hilliard, Ken Farrar, and their accounting firm, Milford, Hilliard and Farrar, P.C.

17.     In his lawsuit, Howard Jr. claimed that he made an oral contract with his father in December of 1980, whereby Howard Jr. would inherit equally with his younger brother, Pierce Marshall. According to Howard Jr., Mr. Marshall promised – during the same transaction in which Mr. Marshall was forced to buy back Howard Jr.'s shares of Koch stock – that Howard Jr. would inherit equally with his brother Pierce.

18.     The alleged oral agreement had remained a secret until Mr. Marshall's death. But once the only witness died who could contradict the alleged contract,

---

[3] These documents consisted of six wills and seven codicils.

Howard Jr. sprung forth with allegations that he had an oral contract with his father and began suing everyone who was ever involved in Mr. Marshall's estate planning or financial affairs because none of it reflected the "oral contract."

19.     In his probate lawsuit filed in December of 1995, Howard Jr. claimed that Finley Hilliard and Ken Farrar, two of Mr. Marshall's trusted accountants and trustees, participated in a fantastic, far-fetched conspiracy whereby they overwhelmed the free will of Mr. Marshall and tricked him into leaving his entire estate to Pierce which thwarted Mr. Marshall's "true" intentions to treat Howard Jr. the same as Pierce.  According to Howard Jr., Finley Hilliard and Ken Farrar committed a litany of negligent, fraudulent, and intentional acts, both individually and as trustees for Mr. Marshall's trusts, to further this conspiracy.

20.     By the end of 1997, Howard Jr.'s lawsuit had taken a huge toll on Finley Hilliard and Ken Farrar, financially and emotionally.  Therefore, despite the fact that Howard Jr.'s lawsuit lacked merit, Finley Hilliard and Ken Farrar thought it would be in their overall best interest to reach a settlement that allowed them to buy their peace and begin rejuvenating their accounting practice and personal lives.  The price of their freedom was $1,000,000, which was the policy limit of their malpractice insurance policy.

21.     Therefore, on December 5, 1997, Finley Hilliard, Ken Farrar, and Milford, Hilliard and Farrar, P.C., entered into a settlement agreement with Howard

Jr. and his lawyers, Jack W. Lawter, Jr., Dianne W. Lawter, and Avi S. Peretz.  A copy of the settlement agreement is attached to this pleading as Exhibit A.

22.     Howard Jr.'s lawyers, Jack Lawter[4] and Avi Peretz, signed the settlement agreement, and the settlement agreement was binding upon all lawyer Defendants and their law firms. *See* paragraph 15 ("This Settlement Agreement shall be binding upon ... the parties hereto ... and attorneys"); *see also* paragraph 16(2) ("Each signatory to this Settlement Agreement expressly promises, agrees, warrants, and represents in all capacities that ... by their approval to this Settlement Agreement, such attorneys of record shall be bound by the terms and provisions of this Settlement Agreement").

23.     The settlement agreement released Finley Hilliard, Ken Farrar, and their accounting firm from all negligent and intentional acts -- and in all possible capacities, both individually and as trustees.  Finley Hilliard and Ken Farrar, solely as trustees, were to remain named parties in the lawsuit only because they were trustees of certain trusts created by Mr. Marshall and thus were "stakeholders."  Howard Jr. and his lawyers promised to "promptly amend" their pleadings to remove all allegations of impropriety against Finley or Ken,

---

[4] Jack Lawter signed for himself, Diane Lawter, and Lawter & Lawter. *See* page 9.

individually or a trustees.[5] Unbeknownst to Finley Hilliard and Ken Farrar, Howard Jr. and his lawyers did not intend to honor the settlement agreement.

24. Howard Jr. and his lawyers never abided by the terms of the settlement agreement and, after lining their pockets with settlement money, they continued to make allegations against Finley Hilliard and Ken Farrar as alleged participants in a scheme to deprive Howard Jr. of his rightful inheritance.

25. Therefore, this lawsuit seeks recovery of the $1,000,000 settlement and all other damages arising from Defendants' breach of the settlement agreement and fraudulent conduct.

**THE SETTLEMENT AGREEMENT**

26. The settlement agreement was very clear -- Howard Jr. and his lawyers agreed that they would never make any allegations or claims against Finley Hilliard or Ken Farrar at all -- period. Not as individuals, not as trustees. They were to "promptly amend" their pleadings and never again make any allegations of negligent acts, fraudulent acts, intentional acts, failures to act, nothing -- individually or as trustees.[6] Finley Hilliard and Ken Farrar were simply to be named as parties in their trustee capacities because these trusts contained Mr. Marshall's assets. Howard Jr. and his lawyers could name

---

[5] *See* paragraphs 3 & 4 of the settlement agreement.

[6] *Id.*

Finley Hilliard and Ken Farrar as trustee defendants only, but they could not make any allegations of impropriety, and they could not assert any causes of actions against them.

27. In particular, the settlement agreement provided:

| **Paragraph:** | **Provision:** |
|---|---|
| 1. | "**Marshall [Howard Jr.] further covenants and agrees to promptly amend his pleadings to dismiss claims and not to institute or prosecute any suit against Hilliard and Farrar in their capacities as trustees** of the Subject Trusts or the Additional Trusts or the Firm or CNA **on account of or arising out of:** (a) any and all acts of **misfeasance or nonfeasance** by the; (b) all acts or omissions, whether such acts or omissions constitute any form of **negligence or** any form of **intentional conduct** by them; (c) any claim for **breach of any duty** or obligation to Marshall, or to any other person or entity for which Marshall might assert a claim against them; (d) any claim for **error or omission in the rendering of or failure to render any services as trustees or accountants** by them; (e) any claim for **breach of trust or fiduciary duty** by them to any person, entity or trust." |
| 2. | " ... it is further understood and agreed by the parties hereto that **Marshall** has not released and **may maintain and continue to prosecute actions against Hilliard and Farrar in their capacities as trustee or trustees** ... but such actions shall be solely in their capacities as trustees of one or more of the Subject Trusts or the Additional Trusts, and then **only because said trustees are necessary parties to claims or causes of action which Marshall may prosecute seeking to establish a right in or to the assets of the Subject Trusts or the Additional Trusts** or an interpretation of the terms of the Subject Trusts or the Additional Trusts, **and not because of any act or failure to act on the part of Hilliard and/or Farrar, as trustees.**" |
| 7. | "**Marshall further covenants and agrees that should any judgment or other order be rendered in his favor against Hilliard or Farrar in their representative capacities as trustees** in any action which survives this Settlement Agreement, **Marshall shall not execute or attempt to execute or collect any such judgment** upon |

> or from any asset or property owned individually by Hilliard or Farrar or by the Firm or against CNA."

(Emphasis added).

**HOWARD JR. AND HIS LAWYERS BREACHED THE SETTLEMENT AGREEMENT**

27. On February 13, 1998, approximately two months after the settlement agreement was signed, Howard Jr. and his lawyers filed their an amended pleading entitled "Fifth Amended Will Contest, Request for Declaratory Judgment, and Petition for Damages." *See* Exhibit B. The pleading was a blatant violation of the settlement agreement.

28. Howard Jr. and his lawyers defined Finley Hilliard and Ken Farrar as "trustee" defendants only in the beginning of the pleading, but they then made numerous allegations of impropriety that were all prohibited by the settlement agreement.

29. Howard Jr.'s pleading described Finley Hilliard and Kenneth Farrar as two individuals who repeatedly renounced their fiduciary duties and obligations as trustees, thereby justifying a lawsuit that sought actual damages of at least $500,000,000 plus unspecified punitive damages:

- "Decedent and/or Defendants[7] entered into a series of transactions designed to evade the Decedent's obligations to Howard Marshall." (*See* Exhibit B, Fifth Amended Will Contest, Request for Declaratory Judgment, and Petition for Damages, paragraph 15)

---

[7]Finley Hilliard was defined as one of the "Defendants" in paragraph 11 of Exhibit B.

- "Beginning in 1994, Pierce Marshall and other Defendants caused the Decedent to sign a series of some of the most overreaching documents that can be imagined.... None of these or the other documents or transactions that Pierce Marshall and other Defendants caused the Decedent to sign were of any benefit to the Decedent." (*Id.*, at paragraphs 22-23)

- "Moreover, throughout all times that Pierce Marshall and Finley Hilliard have acted as trustees under the purported Marshall Living Trust, the actions of said trustees have been marked by a total disregard of the Decedent and blatant self-dealing transactions by Pierce Marshall." (Id., at paragraph 24)

- "The trustees (Pierce Marshall and Finley Hilliard) sold the Decedent's shares of Marshall Petroleum stock to Marshall Petroleum, Inc. (by Pierce Marshall as chief executive officer) in exchange for an annunity for Mr. Marshall's life in the amount of $7.8 million per year for the first year, increasing by 20% for each year thereafter.... This transaction was an absolutely miserable deal for the Decedent and the purported Marshall Living Trust and demonstrates that the existence of the purported Marshall Living Trust was a fiction and that it was in fact administered solely for the benefit of Pierce Marshall and other Defendants acting in concert with him." (*Id.*, at paragraph 25)

- "Another example of Pierce Marshall's self-dealing and improper usurpation of Decedent's property was the creation of the purported Marshall Museum of Racing.... Pierce Marshall and Finley Hilliard, as trustees, have usurped the Decedent's money to create and fund this 'museum.'" (*Id.*, at paragraph 26)

- "Finley Hilliard, as trustee, participated in this fraudulent transaction [that made the Living Trust irrevocable] with Pierce Marshall as well as some of the other Defendants." (*Id.*, at paragraph 27)

- Mr. Marshall's 1992 Will and 1993 Codicil was the result of "undue influence exerted over the Decedent by Defendants ... [which] operated to subvert and overpower the Decedent's mind at the time the purported 1992 Will and 1993 Codicil were executed ...." (*Id.*, at paragraph 33).

- "Howard Marshall asserts that the purported Marshall Living Trust and amendments thereto, if in fact knowingly executed by the Decedent, were executed as a result of undue influence and duress exerted over the Decedent by Defendants .... Such undue influence and duress existed and was exerted by Defendants and/or others acting in concerts with them; such undue influence effectively operated so as to subvert or overpower the mind

of the Decedent at the time of the execution of the purported Marshall Living Trust and all amendments thereto in question; Decedent would not have executed the purported Marshall Living Trust instrument and all amendments thereto but for such undue influence and duress." (*Id.*, at paragraph 38)

- "[T]he purported Marshall Living Trust instrument and all amendments thereto, if in fact knowingly executed by Decedent, were executed as a result of actual or constructive fraud, either in the inducement or otherwise, perpetrated on the Decedent by Defendants ...." (*Id.*, at paragraph 41)

- "[T]he Marshall Living Trust is a sham which has been used by Pierce Marshall and other Defendants to perpetrate a fraud on Howard Marshall and others." (*Id.*, at paragraph 47)

- "[I]t appears that Pierce Marshall and other Defendants orchestrated sales of Marshall Petroleum, Inc. stock from the purported Marshall Living Trust and other trusts to Marshall Petroleum, Inc. for absurdly inadequate consideration, thereby further dissipating Decedent's property and Estate." (Id., at paragraph 51).

- "If not for the conduct of Defendants, Decedent would not have breached his contract with Howard Marshall, and Howard Marshall would have received one-half of the property belonging to the Decedent. In addition, the actions of Defendants in attempting to hide assets and engage in fraudulent and collusive acts to avoid the contractual obligations of the Decedent constitute tortious interference with inheritance rights." (*Id.*, at paragraph 52)

- "Howard Marshall seeks damages against Defendants, and each of them, for tortious interference with contract in an amount according to proof, and not less than $500 million." (*Id.*, at paragraph 53)

- "On information and belief, Defendants have engaged in conduct which was intended to defraud the Decedent's creditors including Howard Marshall. Such conduct includes fraudulent transfers of assets, creating a sham administration of the purported Marshall Living Trust in Louisiana and a sham ancillary administration of the Decedent's estate in Louisiana, filing collusive lawsuits, filing ex parte lawsuits and attempting to enforce clearly invalid documents such as the fraudulent "Renunciation" document executed by Pierce Marshall as attorney-in-fact." (*Id.*, at paragraph 54)

- "The actions of Defendants constitute tortious interference with Howard Marshall's inheritance rights.... The actions of the Defendants and Decedent were intentional and fraudulent." (*Id.*, at paragraph 55)

- "Howard Marshall seeks damages for tortious interference with inheritance rights against Defendants, and each of them, in an amount according to proof, and not less than $500 million." (*Id.*, at paragraph 56)

- "[T]he conduct Defendants described above constituted an agreement to commit unlawful acts and/or an agreement to commit lawful acts by illegal means. Accordingly, the Defendants' conduct constitutes a civil conspiracy to breach fiduciary duties, defraud Howard Marshall, and tortiously interfere with Howard Marshall's inheritance rights and contract rights. Howard Marshall seeks actual damages caused as a result of this conspiracy in an amount according to proof, and not less than $500 million." (*Id.*, at paragraph 57)

- "Defendants have been unjustly enriched as a result of such wrongful actions." (*Id.*, at paragraph 58)

- "As previously described, Howard Marshall is entitled to approximately one-half of all property and assets of the Decedent, which assets have been usurped and administered by Pierce Marshall, Finley Hilliard and Ken Farrar as trustees of the purported Marshall Living Trust and other trusts and entities used by them to avoid the obligations of the Decedent and his Estate.... Finley Hilliard and Ken Farrar, as trustees, apparently allowed Pierce Marshall to do whatever he pleased with the assets of the purported Marshall Living Trust and participated in transactions which benefitted Pierce Marshall to the detriment of the Decedent, his Estate, his creditors and Howard Marshall. This constituted a breach of fiduciary duties by Finley Hilliard and Ken Farrar, as trustee. In addition, Pierce Marshall, Ken Farrar, as trustee, and Finley Hilliard, as trustee, are liable for negligence and gross negligence. Howard Marshall seeks damages for such conduct." (*Id.*, at paragraph 60)

- "It is believed that the actions of Defendants were intentional and malicious. Accordingly, Howard Marshall seeks punitive damages." (*Id.*, at paragraph 61)

30. It completely defies logic and imagination how any reasonable person (not to mention three lawyers and a Ph.D.[8]) could make these allegations and

[8] Howard Jr., has a Ph.D. in particle physics from California Technical Institute.

assert these causes of action after entering into a settlement agreement just two months earlier that clearly prohibited such conduct.

31. Furthermore, trustees can be personally liable for the types of breaches of trust and breaches of fiduciary duty that were alleged by Howard Jr. and his lawyers. Therefore, these allegations sought to render Finley Hilliard and Ken Farrar personally liable to Howard Jr., which was also a clear violation of the settlement agreement.

32. Howard Jr. and his lawyers continued to make these horrid allegations in subsequent pleadings, never swaying in their determination to renounce the settlement agreement. *See* Exhibit C, Howard Jr.'s Fourth Amended Consolidated Petition. Through trial, Howard Jr. and his lawyers continued to allege that Finley Hilliard and Ken Farrar usurped Mr. Marshall's money, that they breached their fiduciary duties, that they entered into sham transactions, that they exerted undue influence over Mr. Marshall, that they were voluntary participants in "Pierce Marshall's fraudulent schemes to cheat his brother," that they tortiously interfered with Howard Jr.'s inheritance and contract rights, that they attempted to hide assets, and that they engaged in discovery abuse. *See* Exhibit C, paragraphs 5(18), 57, 60, 64, 65 & 95. At trial, Howard Jr. and his lawyers continued to seek actual damages in excess of $500,000,000 plus unspecified punitive damages. *Id.*, at paragraphs 57, 60 & 95.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

33. Plaintiffs incorporate by reference the allegations set forth above.

34. Plaintiffs fully performed their contractual obligations. However, none of the Defendants performed their contractual obligations. Plaintiffs upheld their end of the bargain and paid Defendants $1,000,000 to settle a spurious lawsuit, but they received nothing in return.

35. Each of Howard Jr.'s allegations and causes of action described above constitutes a breach of the settlement agreement for which each Defendant is jointly and severally liable. Howard Jr. was a party to the settlement agreement and was represented by Jack W. Lawter, Jr., Dianne W. Lawter, and Avi Peretz (and their respective law firms) who negotiated, signed, and agreed to be bound by the settlement agreement. However, once the Defendants pocketed the settlement proceeds, they have done nothing but thumb their nose at their contractual obligations. This type of conduct, especially for lawyers, is reprehensible.

36. Plaintiffs seek recovery for Defendants' breaches of the settlement agreement.

## SECOND CAUSE OF ACTION: FRAUD

37. Plaintiffs incorporate by reference the allegations set forth above.

38. When parties enter into a contract with no intention of performing the contract, that misrepresentation gives rise to an action in fraud. In light of Defendants' immediate, continuous, and intentional breach of the settlement

agreement, it is clear that they never intended to honor the agreement, which constitutes fraud. Plaintiffs seek all damages proximately caused by Defendants' fraudulent conduct.

## DAMAGES

39. Defendants' breach of contract and fraud proximately caused Finley Hilliard and Ken Farrar economic damages in the amount of the settlement ($1,000,000), plus consequential damages, including lost profits, attorneys' fees incurred in defending the released claims, and court costs.

40. In addition, Defendants' acceptance of the settlement followed by their prompt, blatant, and continuous refusal to abide by the settlement agreement constitutes actionable fraud, which supports mental anguish damages, past and future, and the imposition of exemplary damages.

41. Because Howard Jr. and his lawyers continued to unjustifiably drag them through the mud, Finley Hilliard and Ken Farrar were subjected to severe public humiliation. Finley Hilliard and Ken Farrar seek recovery for such mental anguish damages, past and future.

42. The conduct of Jack W. Lawter, Jr., Diane W. Lawter, and Avi Peretz was especially egregious because they were lawyers who participated in drafting the settlement agreement and were, therefore, very familiar with the restrictions that were placed on them in exchange for a hefty settlement. They knew that Finley Hilliard and Ken Farrar agreed to pay the extorted settlement because the lawsuit was taking a huge toll on them emotionally.

They knew that Finley Hilliard and Ken Farrar simply wanted to buy their peace and be left alone. But these lawyers (and their client) had no intention of honoring their legal commitments. This type of conduct also justifies the imposition of exemplary damages.

## ATTORNEYS' FEES

43. Finley Hilliard and Ken Farrar presented their claim for damages to all Defendants as required by Chapter 38.002 of the Texas Civil Practice & Remedies Code, and all Defendants failed to tender the just amount owed within 30 days. Therefore, pursuant to Chapter 38.001 *et seq*. of the Texas Civil Practice & Remedies Code, Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees incurred in the prosecution of this lawsuit, as well as those incurred fees and costs incurred in the defense of the above-described claims that were filed and prosecuted by Howard Jr. and his lawyers, with contingent awards should this case be appeal to the Court of Appeals, should a writ of error be filed with the Texas Supreme Court, and should the writ be granted.

## CONDITIONS PRECEDENT

44. All conditions precedent have been performed or have occurred as required by Texas Rule of Civil Procedure 54.

## JURY DEMAND

45. Plaintiffs request a trial by jury on all issues.

## PRAYER

WHEREFORE, Plaintiffs, Finley Hilliard and Ken Farrar, and Milford, Hilliard and Farrar, P.C., respectfully request that Defendants, J. Howard Marshall, III, Jack W. Lawter, Jr., and Dianne W. Lawter, Lawter& Lawter, L.L.P., Avi S. Peretz, and Gabriel, Herman, and Peretz, L.L.P., be summoned to appear and answer herein, and that upon final consideration, they be awarded those damages described above in an amount to be determined by a jury, plus their reasonable attorneys' fees, costs of court, prejudgment and post judgment interest as allowed by law, and such other and further relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

RUSTY HARDIN & ASSOCIATES, P.C.

Rusty Hardin
State Bar No. 08972800
Federal I.D. No. 19424
1201 Louisiana, Suite 3300
Houston, Texas 77002
(713) 652-9000
(713) 652-9800 (Fax)

ATTORNEYS FOR PLAINTIFFS

NO. 276,815
and
NO. 276,815-402

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| J. HOWARD MARSHALL, II | § | NUMBER THREE OF |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

NO. 276,815-404

| | | |
|---|---|---|
| ESTATE OF J. HOWARD MARSHALL, II, DECEASED | § | IN THE PROBATE COURT |
| | § | |
| | § | |
| J. HOWARD MARSHALL, III | § | |
| | § | |
| V. | § | NUMBER THREE OF |
| | § | |
| ROBERT S. MACINTYRE, JR., TEMPORARY ADMINISTRATOR OF THE ESTATE OF J. HOWARD MARSHALL, II, DECEASED | § | |
| | § | |
| | § | |
| | § | HARRIS COUNTY, TEXAS |

SETTLEMENT AGREEMENT

This Agreement is entered into by and between J. Howard Marshall, III ("Marshall"); Milford, Hilliard & Farrar, P.C. and its officers and employees (the "Firm"); Finley Hilliard, individually ("Hilliard"); Finley Hilliard, as current or former trustee of the J. Howard Marshall, II Living Trust, the J. Howard Marshall, II Grantor Retained Annuity Trust, the J. Howard Marshall, II Charitable Lead Trust, the J. Howard Marshall, II, Living Trust, Liquidating Trusts No. 1 and No. 2, the J. Howard Marshall Family Trust, the Marshall Petroleum, Inc. Stockholding Trust, and the Marshall Grandchildren's Trusts for the benefit of E. Pierce Marshall, Jr., and Preston Marshall (collectively the "Hilliard Subject Trusts"); Finley Hilliard as current or former trustee of the J. Howard Marshall, II Family Trust, the Eleanor Pierce Stevens Irrevocable Gift Trust #2, The JHM-Yale Charitable Remainder Annuity Trust, the Howard Marshall Charitable Remainder Annuity Trust, and the Houston Land Trust (collectively the "Hilliard Additional Trusts"); Ken Farrar, individually ("Farrar"); Ken Farrar as current or former trustee of the J. Howard Marshall, II Living Trust, the J. Howard Marshall, II, Living Trust, Liquidating Trusts No. 1 and No. 2, and the J. Howard Marshall, II Charitable Lead Trust (collectively the "Farrar Subject Trusts"); Ken Farrar as current or former trustee of the J. Howard Marshall, II Family Trust, the Howard Marshall Charitable Remainder Annuity Trust, and the Houston Land Trust (collectively the "Farrar Additional Trusts"); and Continental Casualty Company (one of the CNA insurance companies), the liability insurer for the Firm, Hilliard, and Farrar ("CNA"). The Hilliard Subject Trusts and the Farrar Subject Trusts may be referred to herein collectively as the "Subject Trusts", and the Hilliard Additional Trusts and the Farrar Additional Trusts may be referred to herein collectively as the "Additional Trusts".

EXHIBIT
A

In consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned parties ("the parties") agree as follows:

1. Hilliard, Farrar, the Firm, and CNA hereby fully acquit and release Marshall together with his employees, representatives, agents, spouse, successors, assigns, and attorneys, Lawter & Lawter, Gabriel Herman & Peretz, and Plauche, Smith & Nissett ("Marshall Releasees") from and against any and all possible claims, demands or causes of action, whether known or unknown, that they may have against any or all of the Marshall Releasees, including without limit, those with respect to or in any way connected with the Subject Trusts and the Additional Trusts, or by reason of or in anyway connected with any other acts, matters, or things done or omitted from being done by the Marshall Releasees in connection with the Subject Trusts and the Additional Trusts for the period through the Effective Date of this Settlement Agreement. This release does not release the obligations of the parties created by this Settlement Agreement.

2. Marshall hereby fully acquits and releases Hilliard, individually and not in his capacity as a trustee, Farrar, individually and not in his capacity as a trustee, the Firm, and CNA together with their employees, agents, representatives, spouses, successors, assigns, and attorneys, Benckenstein & Oxford, L.L.P., Wyckoff & Russell, P.C., and Scofield, Gerard, Veron, Singletary & Pohorelsky (the "Hilliard Releasees"), from and against any and all possible claims, demands or causes of action, whether known or unknown, that Marshall may have against any or all of the Hilliard Releasees, including without limit, those with respect to or in any way connected with the Subject Trusts and the Additional Trusts, or by reason of or in any way connected with any other acts, matters, or things done or omitted from being done by the Hilliard Releasees, in connection with the Subject Trusts and the Additional Trusts for the period through the Effective Date of this Settlement Agreement, including, but not limited to all alleged claims or causes of action against the Hilliard Releasees for any error or omission in the rendering or failure to render professional services as accountants. This release does not include and specifically excludes any other party in the above captioned causes or any related litigation and their respective employees, representatives, agents, spouses, successors, assigns, and attorneys. This release does not release the obligations of the parties created by this Settlement Agreement.

3. Marshall shall promptly amend any pleadings which he may have filed in the proceedings captioned above to delete any claims or allegations against Hilliard, individually, Farrar, individually, or the Firm, and shall not hereafter file any pleadings or bring any action alleging any matter against them or CNA for acts or omissions that occurred prior to the Effective Date. The agreement set forth in this paragraph is a compromise in settlement and does not constitute an admission of any kind that the conduct of any party to the above-captioned cause was proper and specifically shall not affect claims against any other party in the above-captioned causes.

4. Marshall further covenants and agrees to promptly amend his pleadings to dismiss claims and not to institute or prosecute any suit against Hilliard and Farrar in their capacities as trustees of the Subject Trusts or the Additional Trusts or the Firm or CNA on account of or arising out of: (a) any and all acts of misfeasance or nonfeasance by them; (b) all acts and omissions, whether such acts or omissions constitute any form of negligence or any form of intentional conduct by them; (c) any claim for breach of any duty or obligation to Marshall, or to any other person or entity for which Marshall might assert a claim against them; (d) any claim for any error or omission in the rendering of or failure to render any service as trustees or accountants by them; (e) any claim for breach of trust or fiduciary duty by them to any person, entity or trust. The provisions of this paragraph apply only to acts or omissions prior to the Effective Date.

5. Notwithstanding the foregoing, it is understood and agreed by the parties hereto that Marshall has not released and may maintain and continue to prosecute actions against Hilliard and Farrar in their capacities as trustee or trustees in the proceedings captioned above or in any other related proceedings, but such actions shall be solely in their capacities as trustees of one or more of the Subject Trusts or the Additional Trusts, and only then because said trustees are necessary parties to claims or causes of action which Marshall may prosecute seeking to establish a right in or to the assets of the Subject Trusts or the Additional Trusts or an interpretation of the terms of the Subject Trusts or the Additional Trusts, and not because of any act or failure to act on the part of Hilliard and/or Farrar, as trustees. Marshall shall promptly dismiss and not refile all motions to compel and for sanctions (fines, waiver of privilege, and/or attorney's fees) directed to or against Hilliard, individually and as trustee, Farrar, individually and as trustee, or the Firm which have been or are now pending in the proceedings captioned above which have not been ruled upon by the Court, and Marshall agrees that no motions to compel and for sanctions (fines, waiver of privilege, and/or attorney's fees) regarding the same subject matter will be filed or pursued by Marshall in the future except to enforce this Settlement Agreement or with regard to the prosecution of claims or causes of action to establish a right in or to the assets of the Subject Trusts or the Additional Trusts or an interpretation of the terms of the Subject Trusts or the Additional Trusts. Likewise, Hilliard and Farrar, individually and as trustees, shall promptly dismiss and not refile any motions, applications, or other ancillary matters directed to or against Marshall which have been or are now pending in the proceedings captioned above which have not been ruled upon by the Court, and Hilliard and Farrar, individually and as trustees, agree that no such motions, applications, or other ancillary matters regarding the same subject matter will be filed by Hilliard or Farrar, individually and as trustees, in the future except to enforce this Settlement Agreement or with regard to the prosecution or defense of claims or causes of action to establish a right in or to the assets of the Subject Trusts or the Additional Trusts or an interpretation of the terms of the Subject Trusts or the Additional Trusts. Notwithstanding the foregoing, the parties agree to comply with all Rule 11 agreements by and between the parties to this Settlement Agreement.

6. Hilliard and Farrar, individually and as trustees, represent and warrant that no property of any kind or nature belonging to the Estate of J. Howard Marshall, II or to any of the trusts for whom they currently serve or have served as trustee is held or will be held in the future in their individual names or in the name of the Firm or any other person or entity affiliated with any of them.

7. Marshall further covenants and agrees that should any judgment or other order be rendered in his favor against Hilliard or Farrar in their representative capacities as trustees in any action which survives this Settlement Agreement, Marshall shall not execute or attempt to execute or collect any such judgment upon or from any asset or property owned individually by Hilliard or Farrar or by the Firm or against CNA, and Marshall shall on request execute such partial releases of liens as may be required to release any property owned individually by Hilliard or Farrar or the Firm from any lien or encumbrance arising from such judgment. This paragraph shall have no application to any action to enforce a judgment rendered against Hilliard or Farrar in their representative capacities as a trustee or as trustees with respect to assets of the respective trust to which : .ch a judgment relates.

8. Hilliard and Farrar, as trustees of the Subject Trusts, agree that they are subject to the jurisdiction of the Court in the proceedings captioned above and that they will not assert as a defense to any action by Marshall against them in their capacities as trustees that the situs of any of the Subject Trusts is a bar or impediment to the action in the State of Texas. During the pendency of the proceedings captioned above, Hilliard and Farrar, in their individual and trustee capacities, and Marshall agree that nothing will be filed in the State of Louisiana by either which will have a material adverse effect on the claims of the other and that they will not institute any actions to remove the above captioned proceedings from the above captioned Court, excluding appellate remedies. This paragraph shall have no application as to any action to enforce in Louisiana the collection of a judgment rendered against Hilliard or Farrar in their representative capacities as a trustee or trustees with respect to assets of the respective trusts to which such a judgment relates. In this regard, Marshall agrees that he will not contest the payment by Hilliard and Farrar, as trustees, of the ordinary and normal expenditures in the administration of the Subject Trusts (eg., oil and gas operations, taxes, and other payments mandated by the respective trust agreements). Marshall agrees that he will not contest the payment by Hilliard and Farrar as trustees, of fair, reasonable and necessary accounting fees, trustee's and administration fees, and attorneys' fees of Benckenstein & Oxford, L.L.P., Wyckoff & Russell, P.C., and Scofield, Gerard, Veron, Singletary & Pohorelsky incurred by Hilliard and Farrar, as trustees, and the payment by Robert MacIntyre, as Temporary or Permanent Administrator of the Estate of J. Howard Marshall, II, of fair, reasonable, and necessary administration fees and costs and attorneys' fees of Brown, Parker & Leahy, L.L.P., incurred by MacIntyre as administrator.

9. Hilliard and Farrar, as trustees, agree that during the pendency of the litigation described above and for the duration of the administration of this estate, they shall resist and actively oppose any at... ... to remove them as trustees of the Subject

Trusts. If either of them cease to serve as trustee during the pendency of the litigation in the above captioned proceedings, they agree to give Marshall not less than 30 days written notice prior to doing so if the cessation is caused by resignation, and they agree to appoint an individual resident of the State of Texas or a trust company or a bank having trust powers whose principal office is situated in the State of Texas as successor trustee unless the particular trust instrument specifies otherwise. Further, Hilliard and Farrar, as trustees, agree that should events require either of them to cease to serve as trustee, they shall not appoint as a successor trustee any person currently named or appearing as a party to any of the proceedings captioned above, nor any person related to said party by blood or marriage, nor said party's agents, attorneys or employees. Further, they agree to appoint a trustee who is completely independent from the parties in the above captioned causes and who is qualified by experience and reputation to administer the trusts properly.

10. Hilliard and Farrar, as trustees of the Subject Trusts, agree that they will be bound as trustees by the final unsuperseded judgment of the courts of the State of Texas in the above captioned proceedings, and they agree that they shall make no distribution from the assets of the Living Trust except as may be required of them in the proper discharge of their obligations under the terms of the Living Trust, with due regard to the obligations which may be imposed upon said trust by law and in the proceedings captioned above.

11. Hilliard and Farrar represent that the statement of assets of such trusts as of September 30, 1997, furnished to Marshall contain a true and correct statement of the property belonging to said trusts on such date. Hilliard and Farrar further represent that the J. Howard Marshall Living Trust, Liquidating Trusts No. 1 and No. 2 have no assets at the date of this agreement and that they, as Trustees of the J. Howard Marshall, II Living Trust, shall not transfer any assets to said Liquidating Trusts during the pendency of the litigation captioned above, including appeals and collection. Hilliard and Farrar, as trustees of the Subject Trusts, agree to furnish to Marshall the monthly financial statements and accounting compilation reports including statements of assets and liabilities and statements of revenues, distributions, and expenditures during the pendency of any of the litigation described above.

12. Hilliard and Farrar, individually and as trustees, hereby appoint Dale Jefferson as their resident agent for service of process in the State of Texas in any action that may be brought by Marshall to enforce any provision of this Settlement Agreement. Marshall hereby appoints Jack Lawter as his resident agent for service of process in the State of Texas in any action that may be brought by Hilliard, Farrar, the Firm, or CNA to enforce any provision of this Settlement Agreement.

13. CNA has issued its Policy No. 004849385 providing professional and trustee liability insurance coverage to Hilliard, Farrar, and the Firm. Subject to the approval of this Settlement Agreement by all parties hereto on the Effective Date, CNA shall pay to J. Howard Marshall, III and his attorneys, Lawter and Lawter, the sum of One Million Dollars ($1,000,000.00) in full and final settlement of the

matters addressed in this Settlement Agreement. For purposes of this Settlement Agreement, the payment provided above shall be allocated among the several claims asserted as follows: (i) 10% to claims alleging interference with contract rights; (ii) 10% to claims alleging breach of fiduciary duty; (iii) 70% to claims alleging interference with inheritance rights; and (iv) 10% to all other claims that have been or could have been asserted against Hilliard, Farrar, the Firm or CNA including claims for accounting malpractice. It is further agreed and understood that this settlement by CNA, Hilliard, Farrar, and the Firm is made solely to buy their peace; that they categorically deny any allegations against them asserting any act of negligence or wrongdoing; that neither the payment provided above nor anything contained in this Settlement Agreement shall be deemed or construed as an admission of liability by any of them in any capacity or by any other party to the proceedings captioned above; and that neither the payment nor this Settlement Agreement shall be offered as evidence of an admission of liability in any proceeding.

14. It is understood and agreed by all parties that this Settlement Agreement shall not limit or otherwise impair any existing or future claims or causes of actions that any party hereto may have against any persons or entities whatsoever, whether presently parties to the litigation captioned above or not, except as to the parties and actions specifically described in Paragraphs 1 and 5 above. Nothing in this Settlement Agreement shall be construed to limit the claims and causes of action that any party hereto has against other individuals, companies, entities, or trustees of other trusts not described herein. Specifically, this Settlement Agreement shall not impair or limit claims for or against E. Pierce Marshall, in any capacity, Marshall Petroleum, Inc., The Marshall Museum and Library, Harvey Sorensen, in any capacity, Foulston & Siefkin, L.L.P., Elaine T. Marshall, in any capacity, E. Pierce Marshall, Jr., Preston Marshall, Robert MacIntyre, as temporary administrator, or any other person or entity not a party to this Settlement Agreement. This Settlement Agreement shall not impair or limit any claim CNA has or may have as subrogee against any person, trust, or entity, including, but not limited to, the J. Howard Marshall, II Living Trust.

15. This Settlement Agreement shall be binding upon and inure solely to the benefit of the parties hereto, each for themselves, their respective predecessors, successors, personal representatives, heirs, assigns, and attorneys. No person or entity other than the parties hereto and their successors, personal representatives, heirs, and assigns, may assert any claim under this Settlement Agreement, and no other person or entity may assert any claim or right as a third party beneficiary.

16. Each signatory to this Settlement Agreement expressly promises, agrees, warrants, and represents in all capacities:

(1) that he is competent and authorized to execute this Settlement Agreement in the capacities indicated hereon;

(2) that he has not assigned or in any manner sold or transferred any portion of

the claims and causes of action released herein to any individual or any entity, including Cremer Enterprises, Incorporated, except to his attorneys of record, named herein, made the subject matter of this Settlement Agreement, and by their approval of this Settlement Agreement, such attorneys of record shall be bound by the terms and provisions of this Settlement Agreement;

(3) that before executing this Settlement Agreement, he has fully informed himself of its terms, conditions, content, and effects;

(4) that before executing this Settlement Agreement, he has had the benefit and advice of counsel of his own choosing;

(5) that no promise or representation of any kind or character whatsoever has been made to him or any of his attorneys or anyone acting for him, except as expressly stated in this Settlement Agreement;

(6) that he is not relying on the advice of the opposing party or any of their attorneys or representations as to legal or tax consequences of this Settlement Agreement; and

(7) that he was not subject to fraud, duress or over reaching in entering into this Settlement Agreement.

17. The laws of Texas shall apply to this Settlement Agreement for all purposes.

18. This Settlement Agreement shall be effective (the "Effective Date") upon execution by all parties. The parties intend to circulate signature pages initially by facsimile, which shall be considered valid evidence of execution, with original signatures to be circulated promptly thereafter.

19. This Settlement Agreement may be executed in multiple counterparts, any one or more of which shall constitute an original.

20. At the termination of the above captioned proceedings, and at the request and expense of Hilliard or Farrar, Marshall shall return all documents to Hilliard or Farrar which have been produced to Marshall by Hilliard or Farrar or the Firm.

21. This Settlement Agreement is subject to the Protective Order heretofore entered in the above captioned proceedings.

EXECUTED on the dates set forth below to be effective as of the Effective Date.

12/5/97
Date of Signature

J. Howard Marshall, III

Date of Signature

Finley Hilliard
Individually and as current or former trustee of the J. Howard Marshall, II Living Trust, the J. Howard Marshall, II Grantor Retained Annuity Trust, the J. Howard Marshall, II Charitable Lead Trust, the J. Howard Marshall, II, Living Trust, Liquidating Trusts No. 1 and No. 2, the J. Howard Marshall, II Family Trust, the Marshall Petroleum, Inc. Stockholding Trust, the Marshall Grandchildren's Trusts for the benefit of E. Pierce Marshall, Jr., and Preston Marshall, the Eleanor Pierce Stevens Irrevocable Gift Trust #2, The JHM-Yale Charitable Remainder Annuity Trust, the Howard Marshall Charitable Remainder Annuity Trust, and the Houston Land Trust

Date of Signature

Ken Farrar
Individually and as current or former trustee of the J. Howard Marshall, II Living Trust, the J. Howard Marshall, II, Living Trust, Liquidating Trusts No. 1 and No. 2, the J. Howard Marshall, II Charitable Lead Trust, the J. Howard Marshall, II Family Trust, the Howard Marshall Charitable Remainder Annuity Trust, and the Houston Land Trust

Date of Signature

J. Howard Marshall, III

12/5/97
Date of Signature

Finley Hilliard
Individually and as current or former trustee of the J. Howard Marshall, II Living Trust, the J. Howard Marshall, II Grantor Retained Annuity Trust, the J. Howard Marshall, II Charitable Lead Trust, the J. Howard Marshall, II, Living Trust, Liquidating Trusts No. 1 and No. 2, the J. Howard Marshall, II Family Trust, the Marshall Petroleum, Inc. Stockholding Trust, the Marshall Grandchildren's Trusts for the benefit of E. Pierce Marshall, Jr., and Preston Marshall, the Eleanor Pierce Stevens Irrevocable Gift Trust #2, The JHM-Yale Charitable Remainder Annuity Trust, the Howard Marshall Charitable Remainder Annuity Trust, and the Houston Land Trust

12/5/97
Date of Signature

Ken Farrar
Individually and as current or former trustee of the J. Howard Marshall, II Living Trust, the J. Howard Marshall, II, Living Trust, Liquidating Trusts No. 1 and No. 2, the J. Howard Marshall, II Charitable Lead Trust, the J. Howard Marshall, II Family Trust, the Howard Marshall Charitable Remainder Annuity Trust, and the Houston Land Trust

12/5/97
Date of Signature

Milford, Hilliard and
Farrar, P.C.

By: [signature]
Its President

Date of Signature

Continental Casualty Company
(one of the CNA Insurance Companies)

By:
Mark Rooks
Its

APPROVED:

LAWTER & LAWTER

By:
Jack W. Lawter, Jr.
Dianne W. Lawter

GABRIEL, HERMAN & PERETZ, LLP

By:
Avi S. Peretz

Attorneys for J. Howard Marshall, III

Milford, Hilliard and Farrar, P.C.

By:____________________
Its____________________

____________________
Date of Signature

Continental Casualty Company
(one of the CNA Insurance Companies)

By: [signature]
Mark Rooks
Its Accountant Claim Manager

12-5-97
Date of Signature

APPROVED:

LAWYER & LAWYER

By:____________________
Jack W. Lawter, Jr.
Dianne W. Lawter

GABRIEL, HERMAN & PERETZ, LLP

By:____________________
Avi S. Peretz

Attorneys for J. Howard Marshall, III

DEC 05 '97 04:55PM CNA INSURANCE
97% P.03
P.1
DEC-05-1997 17:32

Milford, Hilliard and
Farrar, P.C.

By: ______________________
Its ______________________

______________________
Date of Signature

Continental Casualty Company
(one of the CNA Insurance Companies)

By: ______________________
Mark Rooks
Its ______________________

______________________
Date of Signature

APPROVED:

LAWTER & LAWTER

By: ______________________
Jack W. Lawter, Jr.
Dianne W. Lawter

GABRIEL, HERMAN & PERETZ, LLP

By: ______________________
Avi S. Peretz

Attorneys for J. Howard Marshall, III

SCOFIELD, GERARD, VE[illegible]N, SINGLETARY & POHORELSKY

By: /s/ Russell J. Shutes, Jr.
Russell J. Shutes, Jr.

WYCKOFF & RUSSELL

By: ______________________
James Wyckoff

Attorneys for Finley Hilliard, Ken Farrar and Milford, Hilliard & Farrar, P.C

ROSS, DIXON & MASBACK, LLP

By: ______________________
Lewis K. Loss

Attorneys for CNA

[illegible] 120597

SCOFIELD, GERARD, VERON,
SINGLETARY & POHORELSKY

By:______________________________
Russell J. Stutes, Jr.

WYCKOFF & RUSSELL

By:______________________________
James Wyckoff

Attorneys for Finley Hilliard, Ken Farrar and Milford, Hilliard & Farrar, P.C

ROSS, DIXON & MASBACK, LLP

By:______________________________
Lewis K. Loss

Attorneys for CNA

[illegible] 120597

SCOFIELD, GERARD, V...ON. SINGLETARY & POHORELSKY

By:__________________________
Russell J. Stutes, Jr.

WYCKOFF & RUSSELL

By:__________________________
James Wyckoff

Attorneys for Finley Hilliard, Ken Farrar and Milford, Hilliard & Farrar, P.C

ROSS, DIXON & MASBACK, LLP

By: [signature]
Lewis K. Loss

Attorneys for CNA

Z:\[illegible] FINAL [illegible] 120597

TOTAL P.12

DEC-05-1997 17:33 97% P.06
TOTAL P.15

NO. 276,815
and
NO. 276,815-402

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| J. HOWARD MARSHALL, II | § | NUMBER THREE OF |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

NO. 276,815-404

| | | |
|---|---|---|
| ESTATE OF J. HOWARD MARSHALL, II, DECEASED | § | IN THE PROBATE COURT |
| | § | |
| | § | |
| J. HOWARD MARSHALL, III | § | |
| | § | |
| V. | § | NUMBER THREE OF |
| | § | |
| ROBERT S. MACINTYRE, JR., TEMPORARY ADMINISTRATOR OF THE ESTATE OF J. HOWARD MARSHALL, II, DECEASED | § | HARRIS COUNTY, TEXAS |

SETTLEMENT AGREEMENT

This Agreement is entered into by and between J. Howard Marshall, III ("Marshall"); Milford, Hilliard & Farrar, P.C. and its officers and employees (the "Firm"); Finley Hilliard, individually ("Hilliard"); Finley Hilliard, as current or former trustee of the J. Howard Marshall, II Living Trust, the J. Howard Marshall, II Grantor Retained Annuity Trust, the J. Howard Marshall, II Charitable Lead Trust, the J. Howard Marshall, II, Living Trust, Liquidating Trusts No. 1 and No. 2, the J. Howard Marshall Family Trust, the Marshall Petroleum, Inc. Stockholding Trust, and the Marshall Grandchildren's Trusts for the benefit of E. Pierce Marshall, Jr., and Preston Marshall (collectively the "Hilliard Subject Trusts"); Finley Hilliard as current or former trustee of the J. Howard Marshall, II Family Trust, the Eleanor Pierce Stevens Irrevocable Gift Trust #2, The JHM-Yale Charitable Remainder Annuity Trust, the Howard Marshall Charitable Remainder Annuity Trust, and the Houston Land Trust (collectively the "Hilliard Additional Trusts"); Ken Farrar, individually ("Farrar"); Ken Farrar as current or former trustee of the J. Howard Marshall, II Living Trust, the J. Howard Marshall, II, Living Trust, Liquidating Trusts No. 1 and No. 2, and the J. Howard Marshall, II Charitable Lead Trust (collectively the "Farrar Subject Trusts"); Ken Farrar as current or former trustee of the J. Howard Marshall, II Family Trust, the Howard Marshall Charitable Remainder Annuity Trust, and the Houston Land Trust (collectively the "Farrar Additional Trusts"); and Continental Casualty Company (one of the CNA insurance companies), the liability insurer for the Firm, Hilliard, and Farrar ("CNA"). The Hilliard Subject Trusts and the Farrar Subject Trusts may be referred to herein collectively as the "Subject Trusts", and the Hilliard Additional Trusts and the Farrar Additional Trusts may be referred to herein collectively as the "Additional Trusts".

EXHIBIT A

In consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned parties ("the parties") agree as follows:

1.  Hilliard, Farrar, the Firm, and CNA hereby fully acquit and release Marshall together with his employees, representatives, agents, spouse, successors, assigns, and attorneys, Lawter & Lawter, Gabriel Herman & Peretz, and Plauche, Smith & Nissett ("Marshall Releasees") from and against any and all possible claims, demands or causes of action, whether known or unknown, that they may have against any or all of the Marshall Releasees, including without limit, those with respect to or in any way connected with the Subject Trusts and the Additional Trusts, or by reason of or in anyway connected with any other acts, matters, or things done or omitted from being done by the Marshall Releasees in connection with the Subject Trusts and the Additional Trusts for the period through the Effective Date of this Settlement Agreement. This release does not release the obligations of the parties created by this Settlement Agreement.

2.  Marshall hereby fully acquits and releases Hilliard, individually and not in his capacity as a trustee, Farrar, individually and not in his capacity as a trustee, the Firm, and CNA together with their employees, agents, representatives, spouses, successors, assigns, and attorneys, Benckenstein & Oxford, L.L.P., Wyckoff & Russell, P.C., and Scofield, Gerard, Veron, Singletary & Pohorelsky (the "Hilliard Releasees"), from and against any and all possible claims, demands or causes of action, whether known or unknown, that Marshall may have against any or all of the Hilliard Releasees, including without limit, those with respect to or in any way connected with the Subject Trusts and the Additional Trusts, or by reason of or in any way connected with any other acts, matters, or things done or omitted from being done by the Hilliard Releasees, in connection with the Subject Trusts and the Additional Trusts for the period through the Effective Date of this Settlement Agreement, including, but not limited to all alleged claims or causes of action against the Hilliard Releasees for any error or omission in the rendering or failure to render professional services as accountants. This release does not include and specifically excludes any other party in the above captioned causes or any related litigation and their respective employees, representatives, agents, spouses, successors, assigns, and attorneys. This release does not release the obligations of the parties created by this Settlement Agreement.

3.  Marshall shall promptly amend any pleadings which he may have filed in the proceedings captioned above to delete any claims or allegations against Hilliard, individually, Farrar, individually, or the Firm, and shall not hereafter file any pleadings or bring any action alleging any matter against them or CNA for acts or omissions that occurred prior to the Effective Date. The agreement set forth in this paragraph is a compromise in settlement and does not constitute an admission of any kind that the conduct of any party to the above-captioned cause was proper and specifically shall not affect claims against any other party in the above-captioned causes.

4.      Marshall further covenants and agrees to promptly amend his pleadings to dismiss claims and not to institute or prosecute any suit against Hilliard and Farrar in their capacities as trustees of the Subject Trusts or the Additional Trusts or the Firm or CNA on account of or arising out of: (a) any and all acts of misfeasance or nonfeasance by them; (b) all acts and omissions, whether such acts or omissions constitute any form of negligence or any form of intentional conduct by them; (c) any claim for breach of any duty or obligation to Marshall, or to any other person or entity for which Marshall might assert a claim against them; (d) any claim for any error or omission in the rendering of or failure to render any service as trustees or accountants by them; (e) any claim for breach of trust or fiduciary duty by them to any person, entity or trust. The provisions of this paragraph apply only to acts or omissions prior to the Effective Date.

5.      Notwithstanding the foregoing, it is understood and agreed by the parties hereto that Marshall has not released and may maintain and continue to prosecute actions against Hilliard and Farrar in their capacities as trustee or trustees in the proceedings captioned above or in any other related proceedings, but such actions shall be solely in their capacities as trustees of one or more of the Subject Trusts or the Additional Trusts, and only then because said trustees are necessary parties to claims or causes of action which Marshall may prosecute seeking to establish a right in or to the assets of the Subject Trusts or the Additional Trusts or an interpretation of the terms of the Subject Trusts or the Additional Trusts, and not because of any act or failure to act on the part of Hilliard and/or Farrar, as trustees. Marshall shall promptly dismiss and not refile all motions to compel and for sanctions (fines, waiver of privilege, and/or attorney's fees) directed to or against Hilliard, individually and as trustee, Farrar, individually and as trustee, or the Firm which have been or are now pending in the proceedings captioned above which have not been ruled upon by the Court, and Marshall agrees that no motions to compel and for sanctions (fines, waiver of privilege, and/or attorney's fees) regarding the same subject matter will be filed or pursued by Marshall in the future except to enforce this Settlement Agreement or with regard to the prosecution of claims or causes of action to establish a right in or to the assets of the Subject Trusts or the Additional Trusts or an interpretation of the terms of the Subject Trusts or the Additional Trusts. Likewise, Hilliard and Farrar, individually and as trustees, shall promptly dismiss and not refile any motions, applications, or other ancillary matters directed to or against Marshall which have been or are now pending in the proceedings captioned above which have not been ruled upon by the Court, and Hilliard and Farrar, individually and as trustees, agree that no such motions, applications, or other ancillary matters regarding the same subject matter will be filed by Hilliard or Farrar, individually and as trustees, in the future except to enforce this Settlement Agreement or with regard to the prosecution or defense of claims or causes of action to establish a right in or to the assets of the Subject Trusts or the Additional Trusts or an interpretation of the terms of the Subject Trusts or the Additional Trusts. Notwithstanding the foregoing, the parties agree to comply with all Rule 11 agreements by and between the parties to this Settlement Agreement.

6. Hilliard and Farrar, individually and as trustees, represent and warrant that no property of any kind or nature belonging to the Estate of J. Howard Marshall, II or to any of the trusts for whom they currently serve or have served as trustee is held or will be held in the future in their individual names or in the name of the Firm or any other person or entity affiliated with any of them.

7. Marshall further covenants and agrees that should any judgment or other order be rendered in his favor against Hilliard or Farrar in their representative capacities as trustees in any action which survives this Settlement Agreement, Marshall shall not execute or attempt to execute or collect any such judgment upon or from any asset or property owned individually by Hilliard or Farrar or by the Firm or against CNA, and Marshall shall on request execute such partial releases of liens as may be required to release any property owned individually by Hilliard or Farrar or the Firm from any lien or encumbrance arising from such judgment. This paragraph shall have no application to any action to enforce a judgment rendered against Hilliard or Farrar in their representative capacities as a trustee or as trustees with respect to assets of the respective trust to which such a judgment relates.

8. Hilliard and Farrar, as trustees of the Subject Trusts, agree that they are subject to the jurisdiction of the Court in the proceedings captioned above and that they will not assert as a defense to any action by Marshall against them in their capacities as trustees that the situs of any of the Subject Trusts is a bar or impediment to the action in the State of Texas. During the pendency of the proceedings captioned above, Hilliard and Farrar, in their individual and trustee capacities, and Marshall agree that nothing will be filed in the State of Louisiana by either which will have a material adverse effect on the claims of the other and that they will not institute any actions to remove the above captioned proceedings from the above captioned Court, excluding appellate remedies. This paragraph shall have no application as to any action to enforce in Louisiana the collection of a judgment rendered against Hilliard or Farrar in their representative capacities as a trustee or trustees with respect to assets of the respective trusts to which such a judgment relates. In this regard, Marshall agrees that he will not contest the payment by Hilliard and Farrar, as trustees, of the ordinary and normal expenditures in the administration of the Subject Trusts (eg., oil and gas operations, taxes, and other payments mandated by the respective trust agreements). Marshall agrees that he will not contest the payment by Hilliard and Farrar as trustees, of fair, reasonable and necessary accounting fees, trustee's and administration fees, and attorneys' fees of Benckenstein & Oxford, L.L.P., Wyckoff & Russell, P.C., and Scofield, Gerard, Veron, Singletary & Pohorelsky incurred by Hilliard and Farrar, as trustees, and the payment by Robert MacIntyre, as Temporary or Permanent Administrator of the Estate of J. Howard Marshall, II, of fair, reasonable, and necessary administration fees and costs and attorneys' fees of Brown, Parker & Leahy, L.L.P., incurred by MacIntyre as administrator.

9. Hilliard and Farrar, as trustees, agree that during the pendency of the litigation described above and for the duration of the administration of this estate, they shall resist and actively oppose any attempt to remove them as trustees of the Subject

Trusts. If either of them cease to serve as trustee during the pendency of the litigation in the above captioned proceedings, they agree to give Marshall not less than 30 days written notice prior to doing so if the cessation is caused by resignation, and they agree to appoint an individual resident of the State of Texas or a trust company or a bank having trust powers whose principal office is situated in the State of Texas as successor trustee unless the particular trust instrument specifies otherwise. Further, Hilliard and Farrar, as trustees, agree that should events require either of them to cease to serve as trustee, they shall not appoint as a successor trustee any person currently named or appearing as a party to any of the proceedings captioned above, nor any person related to said party by blood or marriage, nor said party's agents, attorneys or employees. Further, they agree to appoint a trustee who is completely independent from the parties in the above captioned causes and who is qualified by experience and reputation to administer the trusts properly.

10. Hilliard and Farrar, as trustees of the Subject Trusts, agree that they will be bound as trustees by the final unsuperseded judgment of the courts of the State of Texas in the above captioned proceedings, and they agree that they shall make no distribution from the assets of the Living Trust except as may be required of them in the proper discharge of their obligations under the terms of the Living Trust, with due regard to the obligations which may be imposed upon said trust by law and in the proceedings captioned above.

11. Hilliard and Farrar represent that the statement of assets of such trusts as of September 30, 1997, furnished to Marshall contain a true and correct statement of the property belonging to said trusts on such date. Hilliard and Farrar further represent that the J. Howard Marshall Living Trust, Liquidating Trusts No. 1 and No. 2 have no assets at the date of this agreement and that they, as Trustees of the J. Howard Marshall, II Living Trust, shall not transfer any assets to said Liquidating Trusts during the pendency of the litigation captioned above, including appeals and collection. Hilliard and Farrar, as trustees of the Subject Trusts, agree to furnish to Marshall the monthly financial statements and accounting compilation reports including statements of assets and liabilities and statements of revenues, distributions, and expenditures during the pendency of any of the litigation described above.

12. Hilliard and Farrar, individually and as trustees, hereby appoint Dale Jefferson as their resident agent for service of process in the State of Texas in any action that may be brought by Marshall to enforce any provision of this Settlement Agreement. Marshall hereby appoints Jack Lawter as his resident agent for service of process in the State of Texas in any action that may be brought by Hilliard, Farrar, the Firm, or CNA to enforce any provision of this Settlement Agreement.

13. CNA has issued its Policy No. 004849385 providing professional and trustee liability insurance coverage to Hilliard, Farrar, and the Firm. Subject to the approval of this Settlement Agreement by all parties hereto on the Effective Date, CNA shall pay to J. Howard Marshall, III and his attorneys, Lawter and Lawter, the sum of One Million Dollars ($1,000,000.00) in full and final settlement of the

matters addressed in this Settlement Agreement. For purposes of this Settlement Agreement, the payment provided above shall be allocated among the several claims asserted as follows: (i) 10% to claims alleging interference with contract rights; (ii) 10% to claims alleging breach of fiduciary duty; (iii) 70% to claims alleging interference with inheritance rights; and (iv) 10% to all other claims that have been or could have been asserted against Hilliard, Farrar, the Firm or CNA including claims for accounting malpractice. It is further agreed and understood that this settlement by CNA, Hilliard, Farrar, and the Firm is made solely to buy their peace; that they categorically deny any allegations against them asserting any act of negligence or wrongdoing; that neither the payment provided above nor anything contained in this Settlement Agreement shall be deemed or construed as an admission of liability by any of them in any capacity or by any other party to the proceedings captioned above; and that neither the payment nor this Settlement Agreement shall be offered as evidence of an admission of liability in any proceeding.

14. It is understood and agreed by all parties that this Settlement Agreement shall not limit or otherwise impair any existing or future claims or causes of actions that any party hereto may have against any persons or entities whatsoever, whether presently parties to the litigation captioned above or not, except as to the parties and actions specifically described in Paragraphs 1 and 5 above. Nothing in this Settlement Agreement shall be construed to limit the claims and causes of action that any party hereto has against other individuals, companies, entities, or trustees of other trusts not described herein. Specifically, this Settlement Agreement shall not impair or limit claims for or against E. Pierce Marshall, in any capacity, Marshall Petroleum, Inc., The Marshall Museum and Library, Harvey Sorensen, in any capacity, Foulston & Siefkin, L.L.P., Elaine T. Marshall, in any capacity, E. Pierce Marshall, Jr., Preston Marshall, Robert MacIntyre, as temporary administrator, or any other person or entity not a party to this Settlement Agreement. This Settlement Agreement shall not impair or limit any claim CNA has or may have as subrogee against any person, trust, or entity, including, but not limited to, the J. Howard Marshall, II Living Trust.

15. This Settlement Agreement shall be binding upon and inure solely to the benefit of the parties hereto, each for themselves, their respective predecessors, successors, personal representatives, heirs, assigns, and attorneys. No person or entity other than the parties hereto and their successors, personal representatives, heirs, and assigns, may assert any claim under this Settlement Agreement, and no other person or entity may assert any claim or right as a third party beneficiary.

16. Each signatory to this Settlement Agreement expressly promises, agrees, warrants, and represents in all capacities:

(1) that he is competent and authorized to execute this Settlement Agreement in the capacities indicated hereon;

(2) that he has not assigned or in any manner sold or transferred any portion of

the claims and causes of action released herein to any individual or any entity, including Cremar Enterprises, Incorporated, except to his attorneys of record, named herein, made the subject matter of this Settlement Agreement, and by their approval of this Settlement Agreement, such attorneys of record shall be bound by the terms and provisions of this Settlement Agreement;

(3)  that before executing this Settlement Agreement, he has fully informed himself of its terms, conditions, content, and effects;

(4)  that before executing this Settlement Agreement, he has had the benefit and advice of counsel of his own choosing;

(5)  that no promise or representation of any kind or character whatsoever has been made to him or any of his attorneys or anyone acting for him, except as expressly stated in this Settlement Agreement;

(6)  that he is not relying on the advice of the opposing party or any of their attorneys or representations as to legal or tax consequences of this Settlement Agreement; and

(7)  that he was not subject to fraud, duress or over reaching in entering into this Settlement Agreement.

17.  The laws of Texas shall apply to this Settlement Agreement for all purposes.

18.  This Settlement Agreement shall be effective (the "Effective Date") upon execution by all parties. The parties intend to circulate signature pages initially by facsimile, which shall be considered valid evidence of execution, with original signatures to be circulated promptly thereafter.

19.  This Settlement Agreement may be executed in multiple counterparts, any one or more of which shall constitute an original.

20.  At the termination of the above captioned proceedings, and at the request and expense of Hilliard or Farrar, Marshall shall return all documents to Hilliard or Farrar which have been produced to Marshall by Hilliard or Farrar or the Firm.

21.  This Settlement Agreement is subject to the Protective Order heretofore entered in the above captioned proceedings.

EXECUTED on the dates set forth below to be effective as of the Effective Date.

12/5/97
Date of Signature

J. Howard Marshall, III

Date of Signature

Finley Hilliard
Individually and as current or former trustee of the J. Howard Marshall, II Living Trust, the J. Howard Marshall, II Grantor Retained Annuity Trust, the J. Howard Marshall, II Charitable Lead Trust, the J. Howard Marshall, II, Living Trust, Liquidating Trusts No. 1 and No. 2, the J. Howard Marshall, II Family Trust, the Marshall Petroleum, Inc. Stockholding Trust, the Marshall Grandchildren's Trusts for the benefit of E. Pierce Marshall, Jr., and Preston Marshall, the Eleanor Pierce Stevens Irrevocable Gift Trust #2, The JHM-Yale Charitable Remainder Annuity Trust, the Howard Marshall Charitable Remainder Annuity Trust, and the Houston Land Trust

Date of Signature

Ken Farrar
Individually and as current or former trustee of the J. Howard Marshall, II Living Trust, the J. Howard Marshall, II, Living Trust, Liquidating Trusts No. 1 and No. 2, the J. Howard Marshall, II Charitable Lead Trust, the J. Howard Marshall, II Family Trust, the Howard Marshall Charitable Remainder Annuity Trust, and the Houston Land Trust

Date of Signature

J. Howard Marshall, III

12/5/97

Date of Signature

Finley Hilliard

Individually and as current or former trustee of the J. Howard Marshall, II Living Trust, the J. Howard Marshall, II Grantor Retained Annuity Trust, the J. Howard Marshall, II Charitable Lead Trust, the J. Howard Marshall, II, Living Trust, Liquidating Trusts No. 1 and No. 2, the J. Howard Marshall, II Family Trust, the Marshall Petroleum, Inc. Stockholding Trust, the Marshall Grandchildren's Trusts for the benefit of E. Pierce Marshall, Jr., and Preston Marshall, the Eleanor Pierce Stevens Irrevocable Gift Trust #2, The JHM-Yale Charitable Remainder Annuity Trust, the Howard Marshall Charitable Remainder Annuity Trust, and the Houston Land Trust

12/5/97

Date of Signature

Ken Farrar

Individually and as current or former trustee of the J. Howard Marshall, II Living Trust, the J. Howard Marshall, II, Living Trust, Liquidating Trusts No. 1 and No. 2, the J. Howard Marshall, II Charitable Lead Trust, the J. Howard Marshall, II Family Trust, the Howard Marshall Charitable Remainder Annuity Trust, and the Houston Land Trust

12/5/97
Date of Signature

Milford, Hilliard and
Farrar, P.C.

By: [signature] L. Hilliard
Its President

Date of Signature

Continental Casualty Company
(one of the CNA Insurance Companies)

By:____________________
Mark Rooks
Its____________________

APPROVED:

LAWTER & LAWTER

By:____________________
Jack W. Lawter, Jr.
Dianne W. Lawter

GABRIEL, HERMAN & PERETZ, LLP

By:____________________
Avi S. Peretz

Attorneys for J. Howard Marshall, III

Date of Signature

Milford, Hilliard and Farrar, P.C.

By: ____________________
Its ____________________

12-5-97
Date of Signature

Continental Casualty Company
(one of the CNA Insurance Companies)

By: [signature]
Mark Rooks
Its Accountant Claim Manager

APPROVED:

LAWTER & LAWTER

By: ____________________
Jack W. Lawter, Jr.
Dianne W. Lawter

GABRIEL, HERMAN & PERETZ, LLP

By: ____________________
Avi S. Peretz

Attorneys for J. Howard Marshall, III

DEC 05 '97 04:55PM CNA INSURANCE

97% P.03

P.1

DEC-05-1997 17:32

Date of Signature

Milford, Hilliard and
Farrar, P.C.

By:____________________________
Its____________________________

Date of Signature

Continental Casualty Company
(one of the CNA Insurance Companies)

By:____________________________
Mark Rooks
Its____________________________

APPROVED:

LAWTER & LAWTER

By:____________________________
Jack W. Lawter, Jr.
Dianne W. Lawter

GABRIEL, HERMAN & PERETZ, LLP

By:____________________________
Avi S. Peretz

Attorneys for J. Howard Marshall, III

SCOFIELD, GERARD, VE[illegible]N,
SINGLETARY & POHORELSKY

By: [signature]
Russell J. Stutes, Jr.

WYCKOFF & RUSSELL

By:______________________________
James Wyckoff

Attorneys for Finley Hilliard, Ken Farrar and Milford, Hilliard & Farrar, P.C

ROSS, DIXON & MASBACK, LLP

By:______________________________
Lewis K. Loss

Attorneys for CNA

2\[illegible] FINAL [illegible] 120597

TOTAL P.12

TOTAL P.04

DEC-05-1997 15:29 318 436 5385 99% P.04

SCOFIELD, GERARD, VERON,
SINGLETARY & POHORELSKY

By: ______________________
Russell J. Stutes, Jr.

WYCKOFF & RUSSELL

By: ______________________
James Wyckoff

Attorneys for Finley Hilliard, Ken Farrar and
Milford, Hilliard & Farrar, P.C

ROSS, DIXON & MASBACK, LLP

By: ______________________
Lewis K. Loss

Attorneys for CNA

Z\MARSHALL\MARSHALL FINAL SHEET 120597

TOTAL P.13

SCOFIELD, GERARD, V[illegible]ON.
SINGLETARY & POHORELSKY

By:____________________________
Russell J. Stutes, Jr.

WYCKOFF & RUSSELL

By:____________________________
James Wyckoff

Attorneys for Finley Hilliard, Ken Farrar and Milford, Hilliard & Farrar, P.C

ROSS, DIXON & MASBACK, LLP

By: ____________________________
Lewis K. Loss

Attorneys for CNA

Z\[illegible] FINAL [illegible] 120597

TOTAL P.12

DEC-05-1997 17:33 97% P.05
TOTAL P.15





230369

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

NO. 276,815-402

PROBATE COURT 3

| | | |
|---|---|---|
| ESTATE OF | § | IN PROBATE COURT |
| | § | |
| J. HOWARD MARSHALL , II | § | NUMBER THREE (3) OF |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

**FIFTH AMENDED WILL CONTEST, REQUEST FOR DECLARATORY JUDGMENT AND PETITION FOR DAMAGES**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, J. HOWARD MARSHALL, III, (hereinafter "Howard Marshall") and hereby files this Fifth Amended Will Contest, Request for Declaratory Judgment and Petition for Damages and would respectfully show unto the Honorable Court and jury the following:

**STATEMENT OF THE CASE AND JURISDICTION**

1.

This is a will contest, an action for declaratory relief and accounting, an action for the imposition of a constructive trust and for damages with respect to the Estate of J Howard Marshall, II and as against the Defendants named herein.

2.

As set forth herein below, Defendant Pierce Marshall, and others, have conspired to gain control over and to usurp all of the property and assets of J Howard Marshall, II (the "Decedent") and to exclude Decedent's eldest son, Howard Marshall, from receiving any portion of his father's property and Estate

98 FEB 13 P 2:02

A CERTIFIED COPY
ATTEST JUN 07 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Deputy

EUGENE BOGANY JR

EXHIBIT
B

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

3.

Howard Marshall brings this action to enforce his rights to Decedent's Estate, to determine the property which should be included in the subject Estate, to determine the proper disposition of such property, and to recover damages against Defendants.

4.

This Court nas jurisdiction over this matter pursuant to §5 and §5A of the Texas Probate Code. This action relates to the settlement, partition and distribution of the subject Estate.

THE PARTIES

PETITIONER

5.

Petitioner, Howard Marshall is a person interested in the subject Estate. Howard Marshall is the eldest son of the Decedent. Howard Marshall is domiciled and resides in Los Angeles County, California.

DEFENDANTS

6.

1. Defendant, E. Pierce Marshall (hereinafter "Pierce Marshall"), is a resident of the State of Texas. Pierce Marshall is the younger son of the Decedent. Upon information and belief, Pierce Marshall is the former trustee of a purported trust allegedly established by Decedent known as the J. Howard Marshall, II Living Trust (hereinafter the "purported Marshall Living Trust") Pierce Marshall has further acted as Decedent's purported "attorney in fact" pursuant to a power of attorney instrument signed by Decedent

A CERTIFIED COPY
ATTEST: JUN 07 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

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

before his death.  Pierce Marshall is sued in this action individually, and in his capacities as former trustee of the purported Marshall Living Trust, and as Decedent's "attorney in fact" under the purported power of attorney.  Pierce Marshall is also named as a defendant in his capacities as trustee of the Marshall Grandchildren's Trust for the benefit of E. Pierce Marshall, Jr., as trustee of the Marshall Grandchildren's Trust for the benefit of Preston Marshall, as trustee of the Marshall Museum of Racing, as trustee of Marshall Museum & Library and as trustee of the Marshall Petroleum, Inc. Stock Holding Trust.   E. Pierce Marshall has already appeared in this action in all capacities sued.

2.      Defendant, Finley Hilliard, is an accountant and a resident of the State of Louisiana.  Finley Hilliard is named as a defendant in his capacities as trustee of the purported Marshall Living Trust.  Finley Hilliard is also named as a defendant in his capacities as trustee of the Marshall Petroleum, Inc. Stock Holding Trust, as trustee of the JHM Grantor Retained Annuity Trust, as trustee of the JHM Charitable Lead Trust, as trustee of the Marshall Grandchildren's Trust for the benefit of E. Pierce Marshall, Jr., as trustee of the Marshall Grandchildren's Trust for the benefit of Preston Marshall and as trustee of the J. Howard Marshall Liquidating Trust Number Two.  Finley Hilliard has already appeared in this action   Finley Hilliard was also sued in this action as an individual. Howard Marshall has resolved all of his claims against Finley Hilliard in his individual capacity by settlement and Howard Marshall is not seeking any relief against Finley Hilliard individually

3.      Ken Farrar, as trustee of the J  Howard Marshall, II Living Trust and as trustee of the J. Howard Marshall Liquidating Trust No  One   Ken Farrar was originally named as a

3

A CERTIFIED COPY

ATTEST ___ JUN 0 7 2001
BEVERLY B  KAUFMAN, County Clerk
Harris County, Texas

_____  Deputy

EUGENE BUGANY JR

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

defendant as trustee and individually. Howard Marshall has resolved all of his claims against Ken Farrar in his individual capacity by settlement and Howard Marshall is not seeking any relief against Ken Farrar, individually. Ken Farrar has already appeared in this action.

4. Defendant, Marshall Petroleum, Inc., is a corporation organized and existing under the laws of the State of Delaware. The Company is also known as Trof, Inc. Marshall Petroleum, Inc. has already appeared in this action.

5. Defendant, Harvey Sorensen, is a resident of the State of Kansas. Upon information and belief, Harvey Sorensen is an attorney, and has at times relevant hereto, acted as counsel for Pierce Marshall, Decedent, Marshall Petroleum, Koch Industries and Eleanor P. Stevens ("Mrs. Stevens"), the mother of Howard and Pierce Marshall. In addition, at times relevant hereto, Harvey Sorensen has served as trustee of the Eleanor P. Stevens Irrevocable Gift Trust, of which Howard Marshall is the beneficiary (hereinafter the "Stevens Trust"). Harvey Sorensen is sued in this action as an individual and in his capacity as trustee of the Stevens Trust. Harvey Sorensen has already appeared in this action.

6. Defendant Foulston & Siefkin, L.L.P., is a law firm, having its principal place of business in Wichita, Kansas. Upon information and belief, at times relevant hereto, Foulston & Siefkin has acted as counsel for Pierce Marshall, Decedent, Marshall Petroleum, Koch Industries and for Mrs Stevens. Upon information and belief, Foulston & Siefkin has also acted as counsel for the Stevens Trust and/or as counsel for Harvey

A CERTIFIED COPY
ATTEST: JUN 07 2001
BEVERLY B KAUFMAN County Clerk
Harris County, Texas

Deputy
EUGENE GOLDEN JR

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

Sorensen as trustee of the Stevens Trust. Foulston & Siefkin, L.L.P. has already appeared in this action.

7.     Elaine T. Marshall, individually, as trustee of the Marshall Grandchildren's Trust for the benefit of E. Pierce Marshall, Jr., and as trustee of the Marshall Grandchildren's Trust for the benefit of Preston Marshall. Elaine T. Marshall has already appeared in this action.

8.     E. Pierce Marshall, Jr   E. Pierce Marshall, Jr. has already appeared in this action.

9.     Preston Marshall. Preston Marshall has already appeared in this action.

10.     Edwin Hunter.   During discovery in this case, Howard Marshall has discovered that this Defendant have been actively involved in the transactions and occurrences complained of in this case. Edwin Hunter may be served at Hunter, Blazier, O'Dowd & Moreno, 1807 Lake Street, Lake Charles, Louisiana 70601.

11.     Defendants Pierce Marshall, Finley Hilliard, Marshall Petroleum, Inc., Harvey Sorensen, Foulston & Siefkin and Edwin Hunter in all capacities set forth above are hereinafter referred to collectively as "Defendants".

7.

In addition to the Defendants named herein, Howard Marshall is informed and believes and thereon alleges that other presently unknown persons/defendants (whether individual, corporate or otherwise) participated in the conduct and transactions alleged herein to cause damage and injury to Howard Marshall, and that said other persons/defendants are jointly and severally liable, along with the named Defendants, for

5

A CERTIFIED COPY

ATTEST: ___JUN 0 7 2001___

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

EUGENE BOCANY JR

all damages and relief alleged herein. Howard Marshall will amend this Petition to identify said persons/defendants' true names and capacitates when such information has been ascertained.

DECEDENT'S ESTATE

8.

The personal representative of the Decedent's Estate in Texas is a necessary party to this action. Robert S. MacIntyre, Jr., as temporary administrator of the Estate of J. Howard Marshall, II (the "Administrator") is named as a party to this action. To the extent claims are alleged against the Decedent or the Decedent's Estate, the Administrator is a defendant. However, the Administrator is an interested party or involuntary plaintiff in other claims asserted herein on behalf of the Estate. Robert S. MacIntyre, Jr., temporary administrator of the Estate of J. Howard Marshall, II has appeared in this action.

INTERESTED PARTIES

9.

Howard Marshall is informed and believes that the following persons are interested parties to this action:

(a) Vickie Lynn Marshall a/k/a Anna Nicole Smith (hereinafter "Vickie Marshall"). Vickie Marshall is the widow of Decedent. Vickie Marshall has appeared in this action.

(b) Mr Dan Manning Dan Manning has been served

(c) Ms Mabel H. Bohannan. Mabel Bohannan has been served.

(d) Ms. Ada Estes. Ada Estes has entered an appearance.

A CERTIFIED COPY
ATTEST. JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

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

(e) Ms. Gladys Estes. Gladys Estes is believed to be deceased.

(f) Mr. James W. Lee. James W. Lee has entered an appearance.

The Attorney General for the State of Texas has been notified of this proceeding pursuant to § 123.003 of the Texas Property Code.

10.

Howard Marshall is informed and believes that there may exist other presently unknown persons who may be interested parties in this action. Howard Marshall will amend this Petition to identify said persons when their identities have been ascertained.

**FACTUAL BACKGROUND**

11.

Decedent died on or about August 4, 1995, in Houston, Harris County, Texas. Decedent was domiciled in Houston, Harris County, Texas. At the time of his death, Decedent was ninety years old. Decedent's heirs include Decedent's two sons, Howard Marshall and Pierce Marshall, and his widow, Vickie Marshall.

12.

During his lifetime, Decedent amassed a huge fortune, becoming one of the wealthiest men in the United States. The bulk of Decedent's fortune consists of and was derived from Decedent's direct and indirect shareholder interest in Koch Industries, Inc. ("Koch Industries"). Koch Industries is a multi-billion dollar closely held corporation. At all times relevant hereto, the voting stock of Koch Industries has been owned by a small group of stockholders, consisting primarily of members of the Koch family and the Marshall family (individually and through Marshall Petroleum)

A CERTIFIED COPY
ATTEST. JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
[signature] Deputy
EUGENE DO ... JR

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

## CHRONOLOGY OF COMPLAINED EVENTS

13.

In 1980, Howard Marshall and the Decedent entered into a contract concerning the purchase of Howard Marshall's shares in Koch Industries, Inc. Such contract obligated the Decedent to treat Howard Marshall equally to Pierce Marshall and his family with regard to the Decedent's estate planning and property. The breach of contract action and related actions for fraud, breach of fiduciary duty, promissory estoppel and a constructive trust have been severed from this cause and are pending in Cause No. 276,815-404 in Probate Court No. 3 of Harris County, Texas. To the extent any causes of action or remedies available to Howard Marshall arising from the contractual commitments and misrepresentations of the Decedent were not severed from this action, Howard Marshall continues to assert such actions herein. Accordingly, Howard Marshall incorporates by reference herein all facts alleged in his Amended Petitions filed in Cause No. 276,815-404 and all facts alleged in future Amended Petitions filed in Cause No. 276,815-404. All of the allegations in Cause No. 276,815-404 are pled in the alternative to the allegations herein.

14.

Further, upon information and belief, in or about 1982, Decedent created or was induced to create the purported Marshall Living Trust. Upon information and belief, Decedent was induced and advised to establish the purported Marshall Living Trust by Pierce Marshall and others The purported Marshall Living Trust was allegedly created to receive most assets and property of the Decedent Upon information and belief, the purported Marshall Living Trust named Pierce Marshall as a trustee, and attempts to pass

A CERTIFIED COPY
ATTEST: JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

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

most of Decedent's estate to Pierce Marshall, to the exclusion of Howard Marshall, at the Decedent's death.

15.

In addition, the Decedent made inter vivos transfers of property to Pierce Marshall and his family for less than full and adequate consideration. The Decedent failed to make equal gifts, transfers or bequests to Howard Marshall. This constituted a breach of the contract by the Decedent. It is believed that the Decedent's breach of contract occurred either at the Decedent's death or at the time he no longer had sufficient assets to equalize the transfers between Howard Marshall and Pierce Marshall. The Decedent's failure to make equal gifts, transfers or bequests to Howard also breached the fiduciary duties owed by the Decedent to Howard Marshall arising from their close, confidential relationship and the Decedent's representations to Howard Marshall. Subsequently, the Decedent and/or the Defendants entered into a series of transactions designed to evade the Decedent's obligations to Howard Marshall.

16.

Furthermore, upon information and belief, such attempted transactions were not limited to the assets owned by the Decedent. Howard Marshall's mother, Mrs. Stevens, owned a substantial portion of Koch Industries stock either directly or through Marshall Petroleum. At times relevant hereto, one of the lawyers for Mrs. Stevens has been Harvey Sorensen Upon information and belief, Harvey Sorensen is believed to have also served as counsel for Koch Industries, Marshall Petroleum, Pierce Marshall and the Decedent.

A CERTIFIED COPY
ATTEST. JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

Harvey Sorensen was also the trustee of the Stevens Trust, of which Howard Marshall is a beneficiary.

17.

At all times it has been Mrs. Stevens' intent and desire to treat her sons Howard Marshall and Pierce Marshall equally as regards her estate planning, so that each of her sons receive financial equivalents from her estate and trusts. Mrs. Stevens, however, had little knowledge or understanding of her business interests and instead relied upon advisors, including the Decedent and Defendants herein. Howard Marshall is informed and believes however, and thereon alleges, that in an effort to receive and control Mrs. Stevens' Koch Industries stock (held in Marshall Petroleum), that Pierce Marshall, Harvey Sorensen, the Decedent and others made misrepresentations to Mrs. Stevens regarding the value of her interest in Koch Industries stock, and have otherwise wrongfully induced Mrs. Stevens to leave her interest in the valuable Koch Industries stock (valued at in excess of $250 million) to Pierce Marshall, while giving Howard Marshall an unsecured $6 million debenture which does not mature until 2009 and issued by Marshall Petroleum, a privately held company controlled by Defendant, Pierce Marshall.

18.

More specifically, Howard Marshall is informed and believes that Pierce Marshall, Harvey Sorensen, the Decedent and other Defendants have misrepresented to Mrs. Stevens that she could make an equal distribution of her estate to her two sons by giving Pierce Marshall her stock in Marshall Petroleum (and thus her interest in Koch Industries)

A CERTIFIED COPY
ATTEST: JUN 07 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

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

and by giving Howard Marshall a Marshall Petroleum unsecured debenture with a face value of $6 million.

### 19.

Upon information and belief, the stock which Mrs. Stevens has been advised and induced to leave to Pierce Marshall has a value of more than $250 million and will be received by Pierce Marshall in 1999. In contrast, the purported $6 million debenture which Mrs. Stevens has been advised and induced to leave to Howard Marshall is, most likely, without substantial value. The debenture is unsecured, and does not mature until the year 2009. Moreover, as Pierce Marshall controls Marshall Petroleum, he has the power to dissipate all assets of Marshall Petroleum to ensure that said debenture never pays off.

### 20.

The object of the misrepresentations to Mrs. Stevens was to mislead Mrs. Stevens as to the true value of her stock, to keep Howard Marshall from receiving any shares of Marshall Petroleum and/or Koch Industries stock, and to see that said stock was passed to Pierce Marshall.

### 21.

In each case, the wrongful transactions alleged herein were designed in order that Pierce Marshall would obtain the entirety of Decedent's property and were in violation of the rights and expectancy of Howard Marshall. Furthermore, following Decedent's marriage to Vickie Marshall, Defendant Pierce Marshall and others took further steps to exercise control over Decedent and his property. Such transactions were designed not only to prevent Decedent from giving any of his property to his wife, but to further prevent

11

A CERTIFIED COPY

ATTEST: ___JUN 0 7 2001___
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

EUGENE COZANY JR

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

Decedent from abiding by his prior agreement with Howard Marshall regarding the disposition of his estate.

22.

Beginning in 1994, Pierce Marshall and other Defendants caused the Decedent to sign a series of some of the most overreaching documents that can be imagined. For instance, the Decedent signed an Act of Procuration (hereinafter the "Power of Attorney") naming Pierce Marshall as attorney in fact. The Power of Attorney included a provision which stated that Decedent could not revoke the document without a letter from a psychiatrist with at least 20 years of clinical experience stating that he was of sound mind and not subject to duress. Decedent also signed a document which purported to make his revocable management trust completely irrevocable. The Decedent also apparently signed a document resigning as a trustee of the purported Marshall Living Trust that held most of his assets thereby leaving Pierce Marshall in complete control of Decedent's property.

23.

None of these or the other documents or transactions that Pierce Marshall and other Defendants caused the Decedent to sign were of any benefit to the Decedent. In fact, they had immediate and detrimental effect on the Decedent. Instead, such transactions served to benefit only Pierce Marshall and other Defendants acting in concert with him.

24.

Moreover, throughout all times that Pierce Marshall and Finley Hilliard have acted as trustees under the purported Marshall Living Trust, the actions of said trustees have

A CERTIFIED COPY
ATTEST. JUN 07 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE DOGANY JR

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

been marked by a total disregard for the Decedent and blatant self-dealing transactions by Pierce Marshall.

25.

Among the most outrageous of Pierce Marshall's self-dealing transactions involved a sale of Marshall Petroleum, Inc. stock from the purported Marshall Living Trust to Marshall Petroleum, Inc., which occurred even before the death of the Decedent. The trustees (Pierce Marshall and Finley Hilliard) sold the Decedent's shares of Marshall Petroleum, Inc. stock to Marshall Petroleum, Inc. (by Pierce Marshall as chief executive officer) in exchange for an annuity for Mr. Marshall's life in the amount of $7.8 million per year for the first year, increasing by 20% for each year thereafter. While the agreement for the sale of such stock provided that the stock had a total value of $33 million, Howard Marshall believes that the actual value of such stock was well in excess of $33 million. Notably, Pierce Marshall arranged this sale at a time when he knew that the Decedent was dying. In fact, Pierce Marshall was at that same time representing to this Court in a guardianship proceeding that Mr. Marshall was terminally ill. The consideration paid for the Decedent's Marshall Petroleum stock (approximately $1.5 million) was a tiny fraction of the value of the shares sold. This transaction was an absolutely miserable deal for the Decedent and the purported Marshall Living Trust and demonstrates that the existence of the purported Marshall Living Trust was a fiction and that it was in fact administered solely for the benefit of Pierce Marshall and other Defendants acting in concert with him.

A CERTIFIED COPY
ATTEST: JUN 07 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

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

26.

Another example of Pierce Marshall's self-dealing and improper usurpation of Decedent's property was the creation of the purported Marshall Museum of Racing. Less than three (3) months before Decedent died, and while Pierce Marshall was supposed to be acting in his father's best interest, Pierce Marshall, using his power of attorney, "amended" the purportedly then "irrevocable" Marshall Living Trust to create a new beneficiary -- the Marshall Museum of Racing. Race cars are a hobby of Pierce Marshall. The Decedent expressed to Howard Marshall (and others) that he considered Pierce Marshall's fascination with race cars a monumental waste of time and money. However, Pierce Marshall and Finley Hilliard, as trustees, have usurped the Decedent's money to create and fund this "museum." It is believed that this "museum" was nothing more than a way for Pierce Marshall to play with his race cars at the Decedent's expense and to the Decedent's detriment. Thus, Pierce Marshall used the Decedent's assets for something that Decedent would have never allowed and which provided no benefit to the Decedent.

27.

Pierce Marshall also executed a document in which, as attorney in fact for the Decedent, Pierce Marshall attempted to amend the supposedly irrevocable purported Marshall Living Trust. Such document was designed to be a fraud on the Decedent's creditors. Finley Hilliard, as trustee, participated in this fraudulent transaction with Pierce Marshall as well as some of the other Defendants This document was designed to enrich Pierce Marshall at the expense of his father and his father's creditors.

A CERTIFIED COPY
ATTEST: JUN 07 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas
_____ Deputy
EUGENE BOGANY JR

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

28.

Finally, at all relevant times, Pierce Marshall has controlled the purported Marshall Living Trust and Decedent's property in a manner directly contrary to the Decedent's intended and agreed upon disposition of his estate. Among other things, while Pierce Marshall was transferring Decedent's property to himself and his businesses, Pierce Marshall has prevented any of Decedent's propert, from passing to Haverford College, the George School or Yale Law School, notwithstanding that Decedent, prior to his death, pledged monies to those institutions. Likewise, Pierce Marshall has prevented Decedent's widow from receiving any portion of her husband's estate, notwithstanding Decedent's expressed intent that his widow be taken care of. Finally, Pierce Marshall, and other Defendants acting in concert with him, have sought to exclude Howard Marshall from receiving any portion of his father's estate, despite the fact that the Decedent intended, promised and contractually agreed that Howard Marshall would be treated equally to Pierce Marshall and his family as regards Decedent's estate and property.

CONTEST AND OPPOSITION TO PROBATE OF THE PURPORTED 1992 WILL AND 1993 CODICIL AND TO ANY APPOINTMENT OF PIERCE MARSHALL AS INDEPENDENT EXECUTOR

29.

On or about August 16, 1995, an application for probate was filed in this action by applicants Pierce Marshall and Finley Hilliard Subsequently, an amended application for probate and for the appointment of Pierce Marshall as independent executor was filed by Pierce Marshall only Then, an Application to Probate a Will as a Muniment of Title (the

A CERTIFIED COPY
ATTEST JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

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

"Application") was filed by Pierce Marshall. The Application alleges, among other things, that prior to Decedent's death, Decedent transferred all of his assets to the purported Marshall Living Trust. The Application further alleges that, at the time of Decedent's death, Decedent left a purported written last will and testament dated December 22, 1992, (the "1992 Will"), and that Decedent also left a purported codicil to the will dated June 11, 1993 (hereinafter the "1993 Codicil"). The Application seeks to submit for probate the purported subject 1992 Will and 1993 Codicil.

### 30.

Excepting the allegations in the Application setting forth the Decedent's name, age and domicile, Howard Marshall denies generally and specifically all other allegations contained in the Application and demands strict proof thereof.

### 31.

Howard Marshall contests and opposes probate of the purported 1992 Will and 1993 Codicil and contests and opposes any appointment of Pierce Marshall as a personal representative of the Estate.

### 32.

Howard Marshall asserts that the purported 1992 Will and 1993 Codicil are invalid as Decedent did not execute them with the formalities and solemnities and under the circumstances required by Texas law

### 33.

In the alternative, and without waiving the preceding allegations, Howard Marshall asserts that the Decedent executed the purported 1992 Will and 1993 Codicil as the result

16

A CERTIFIED COPY

ATTEST: JUN 0 7 2001

BEVERLY B. KAUFMAN. County Clerk
Harris County, Texas

_____ Deputy

EUGENE BETTANY JR

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

of undue influence exerted over the Decedent by Defendants and/or others acting in concert with Defendants. Howard Marshall asserts that at the time the purported 1992 Will and 1993 Codicil were executed, and for many years prior thereto, a fiduciary and confidential relationship existed between Decedent, Pierce Marshall, and other of the Defendants named herein; that at times relevant to this proceeding, the Decedent was in a weakened mental and physical condition, and was susceptible to the exertion of undue influence by Defendants and/or others acting in concert with them; that at the time the purported 1992 Will and 1993 Codicil were executed, and for many years prior thereto, Defendants and/or others acting in concert with them, had unlimited opportunities to exert undue influence upon Decedent; that at times relevant to this proceeding, Defendants and/or others acting in concert with them, embarked on a concerted course of conduct to gain control of Decedent's assets, person and Estate, and that Defendants and/or others acting in concert with them, were directly involved in the planning, preparation, and execution of the purported 1992 Will and 1993 Codicil. Howard Marshall is informed and believes, and thereto alleges, that Defendants and/or others acting in concert with them, did in fact exert undue influence over Decedent, and that said undue influence operated to subvert and overpower the Decedent's mind at the time the purported 1992 Will and 1993 Codicil were executed, resulting in a will that the Decedent would not have executed but for such undue influence

34.

In the alternative, and without waiving the preceding allegations, Howard Marshall asserts that during various time periods during the last years of the Decedent's life,

A CERTIFIED COPY
ATTEST: JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

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

Decedent lacked capacity to execute a will or to conduct his business. In fact, a temporary guardianship proceeding was commenced by Pierce Marshall. Howard Marshall demands strict proof that the Decedent had testamentary capacity at the time the 1992 Will and 1993 Codicil were executed.

35.

In the alternative, and without waiving the preceding allegations, Howard Marshall alleges that if the Decedent did in fact freely and voluntarily execute the purported 1992 Will and 1993 Codicil, that such instruments were a breach of Decedent's prior contractual agreement with Howard Marshall, and that Decedent was, at all times, legally and equitably estopped from leaving his property in a manner which did not treat his sons (and their families) equally. A constructive trust should be imposed on the assets passing to any beneficiaries under the purported 1992 Will and 1993 Codicil.

36.

In the alternative, and without waiving the preceding allegations, Howard Marshall asserts that the 1992 Will and 1993 Codicil were executed by the Decedent at a time when the Decedent was experiencing an irrational belief of facts and circumstances concerning Howard Marshall that were not accurate or true Such irrational beliefs caused the Decedent to execute documents which he otherwise would not have signed including the 1992 Will and 1993 Codicil.

A CERTIFIED COPY
JUN 07 2001
ATTEST: ____________________
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

____________________ Deputy

EUGENE BOGANY JR

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

**THE TRUST AND ALL AMENDMENTS THERETO ARE INVALID AND NO PORTION OF DECEDENT'S ESTATE, PROPERTY OR ASSETS MAY BE TRANSFERRED OR OTHERWISE "POUR OVER" FROM THE ESTATE TO ANY TRUST**

**37.**

Howard Marshall is informed and believes, and thereon contends, that the purported Marshall Living Trust and all amendments thereto are invalid and that no portion of Decedent's Estate, property or assets may be transferred or otherwise "pour over" from the Estate to any trust. Howard Marshall is informed and believes, and thereon contends, that the purported Marshall Living Trust and all amendments thereto are invalid for each of the following reasons set forth below.

38.

Howard Marshall asserts that the purported Marshall Living Trust and amendments thereto, if in fact knowingly executed by the Decedent, were executed as a result of undue influence and duress exerted over the Decedent by Defendants and/or others acting in concert with them, who were in a fiduciary and confidential relationship with the Decedent. Howard Marshall will show, among other things, that Defendants and/or others acting in concert with them, embarked on a concerted course of conduct to gain complete control of Decedent's assets, estate, and person in order to prevent Decedent from amending his testamentary documents Thus, Howard Marshall will show, among other things, that (i) since 1980 Defendants and/or others acting in concert with them, exerted undue influence over the Decedent and that his testamentary instruments and the purported Marshall Living Trust and all amendments thereto were executed as a result of such undue

A CERTIFIED COPY
ATTEST: JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Deputy

EUGENE BOLANY JR

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

influence; (ii) following Decedent's marriage to Vickie Marshall in June 1994, Defendants and/or others acting in concert with them, on July 13, 1994, caused the Decedent to execute an irrevocable power of attorney, purporting to give Pierce Marshall power of attorney over all of Decedent's assets; (iii) that on July 13, 1994, Defendants and/or others acting in concert with them caused Decedent to execute an amendment and restatement of the purported Marshall Living Trust (assuming Decedent, in fact, executed said instrument) which instrument, by its terms, purports to supersede and replace Decedent's prior revocable Trust instrument, and to divest from Decedent the power to amend or revoke the purported Marshall Living Trust prior to his death; (iv) that following a severe illness suffered by Decedent in January 1995, Pierce Marshall sought to be appointed temporary guardian of Decedent to have complete control over the Decedent; (v) that Defendants and/or others acting in concert with them, severely limited access to Decedent by various means, including the use of guards posted at Decedent's door, and even limited Decedent's access to his wife, against the wishes of Decedent; (vi) that Pierce Marshall later sought to obtain appointment as Decedent's permanent guardian and exercise control over Decedent against Decedent's wishes; and (vii) that Defendants and/or others acting in concert with them, sought to misrepresent to Decedent the state of his affairs, including misrepresenting that Decedent was in financial difficulty Such undue influence and duress existed and was exerted by Defendants and/or others acting in concert with them; such undue influence effectively operated so as to subvert or overpower the mind of the Decedent at the time of the execution of the purported Marshall Living Trust and all amendments thereto in question; Decedent would not have executed the purported

A CERTIFIED COPY
ATTEST JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOCANY JR

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

Marshall Living Trust instrument and all amendments thereto but for such undue influence and duress.

### 39.

In the alternative, and without waiving any of the preceding allegations, Howard Marshall alleges that if the Decedent did in fact freely and voluntarily execute the purported Marshall Living Trust instrument, that the irrevocable trust instrument dated July 13, 1994, is a breach of Decedent's prior contractual agreement with Howard Marshall, and that Decedent was, at all times, legally and equitably estopped from creating trusts or making gifts which did not ultimately treat his sons equally.  In 1980, the Decedent promised Howard Marshall that he would treat his sons equally in his estate plan (including their families), and would do so in exchange for Howard Marshall selling his Koch Industries stock to Decedent at a price well below what Howard Marshall would have been able to obtain and in fact had been offered.  Howard Marshall relied upon the Decedent's promises to his detriment and Howard Marshall fully performed his side of the transaction by delivering his shares of Koch Industries stock to the Decedent.  Accordingly, at all relevant times after 1980, the Decedent was legally and equitably estopped from making the purported Marshall Living Trust irrevocable and the assets which should have been transferred to Howard Marshall under the contract should be held in constructive trust for Howard Marshall.  In addition, a constructive trust should be imposed on one-half of the assets conveyed directly or indirectly to Pierce Marshall or his family from the Decedent or the purported Marshall Living Trust, after December of 1980

21

A CERTIFIED COPY
ATTEST   JUN 0 7 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

EUGENE BOGANY JR

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

40.

In the alternative, and without waiving any of the preceding allegations, Howard Marshall is informed and believes, and thereon contends, that at the time that Decedent executed the purported Amendment and Restatement to the Trust instrument in July of 1994, the Decedent did not know or understand the terms of the instrument or its legal effect. Howard Marshall believes that as of July 13, 1994, the Decedent could not read due to poor eyesight. Howard Marshall will further show that the signature on the purported Amendment and Restatement to the Trust in July of 1994 is illegible, and is so located on the instrument so as to indicate that Decedent could not see what he was signing. Further, Howard Marshall has reason to believe, and does believe, that other irregularities exist regarding both Decedent's execution of the purported Amendment and Restatement to the Trust Instrument in July of 1994 and the purported notarization of Decedent's signature. Further, the instrument does not contain Decedent's initials indicating his understanding and assent to the various provisions. Further, the Decedent lacked capacity to conduct business and execute a trust document during some periods during the last several years of his life. Such diminished capacity or alternatively lack of capacity caused or contributed to the execution of a document the Decedent did not understand.

41.

In the alternative, and without waiving the preceding allegations, Howard Marshall alleges that the purported Marshall Living Trust instrument and all amendments thereto, if in fact knowingly executed by Decedent, were executed as a result of actual or con-

A CERTIFIED COPY
ATTEST JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

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

structive fraud, either in the inducement or otherwise, perpetrated on the Decedent by Defendants and/or others acting in concert with them, who were in a fiduciary and confidential relationship with Decedent. Howard Marshall will show, among other things, the events alleged above, and will further show that if, in fact, Decedent executed the purported Marshall Living Trust and all amendments thereto, Decedent did so while under a mistaken impression as to the contents of the instrument and as to the state of Decedent's financial affairs. Such fraud effectively operated so as to subvert or overpower the mind of the Decedent at the time of the execution of the purported Marshall Living Trust instrument and all amendments thereto, and the Decedent would not have executed those instruments but for that fraud.

42.

In the alternative, and without waiving the preceding allegations, Howard Marshall asserts that the purported Marshall Living Trust is invalid because the Trust and all amendments thereto were executed by the Decedent at a time when the Decedent was experiencing an irrational belief of facts and circumstances concerning Howard Marshall that were not true or accurate. Such irrational beliefs caused the Decedent to execute documents which he otherwise would not have signed including the purported Marshall Living Trust and the amendments thereto

A CERTIFIED COPY
ATTEST. JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Deputy
EUGENE COCANY JR

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

### HOWARD MARSHALL REQUESTS THAT THE COURT DENY THE SUBJECT APPLICATION AND THAT THE COURT IMPOSE A CONSTRUCTIVE TRUST

**43.**

For the foregoing reasons, Howard Marshall requests that the Court deny the subject Application. Howard Marshall further requests the Court to impose a constructive trust upon any and all property of Decedent which has heretofore been transferred to the purported Marshall Living Trust, to Pierce Marshall, Elaine Marshall, Preston Marshall, E. Pierce Marshall, Jr., Marshall Petroleum, Inc., Finley Hilliard, Ken Farrar or others as trustees or otherwise, for the benefit of Howard Marshall. It would be unconscionable for Pierce Marshall to obtain or exercise control over any of Decedent's property if it is determined that Pierce Marshall, and/or others acting in concert with him, exerted undue influence and duress over Decedent and/or defrauded the Decedent to prevent Decedent from amending his testamentary documents, and to attempt to insure that Pierce Marshall received Decedent's entire Estate to the exclusion of other rightful and intended heirs. Howard Marshall will further show that, unless a constructive trust is imposed on the property (if any) which has already passed to the purported Marshall Living Trust, Marshall Petroleum, Inc. or its shareholders, or which might otherwise pass to Pierce Marshall or his family outright or in trust, that Pierce Marshall and others will be unjustly enriched, at the expense of Howard Marshall and of other rightful and intended heirs. In addition, the breach of the Decedent's promises and representations to Howard Marshall by the Decedent gives rise to unjust enrichment of the defendants (including Elaine Marshall,

A CERTIFIED COPY
ATTEST. JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE COCHNY JR

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

Preston Marshall and E. Pierce Marshall, Jr.) and unconscionable injury to Howard Marshall.

**REQUEST FOR A JUDICIAL DECLARATION THAT THE PURPORTED MARSHALL LIVING TRUST AND ALL AMENDMENTS THERETO ARE VOID AND THAT ALL PROPERTY OF THE ESTATE PASSES BY INTESTACY**

**44.**

A dispute has arisen and exists between Howard Marshall and Pierce Marshall concerning the validity of the purported Marshall Living Trust instrument and all amendments thereto and as regards the disposition of Decedent's Estate.

**45.**

As alleged more fully hereinabove, Howard Marshall contends that the J. Howard Marshall, II Living Trust and all amendments thereto are void and invalid; that any transfer to such purported Trust is void; that any bequest under the purported 1992 Will is to a void trust and therefore fails; that no alternative residuary gift is set forth in the purported 1992 Will and 1993 Codicil; and that all of Decedent's Estate passes by intestacy.

**46.**

Further, in the alternative and without waiving the preceding allegations, Howard Marshall contends that Decedent, at all times since 1980, was legally and equitably estopped from creating the purported Marshall Living Trust, the purported 1992 Will and 1993 Codicil by reason of Decedent's prior promises and agreement with Howard Marshall as regards Decedent's estate plan, which promises and agreement were relied on by

A CERTIFIED COPY
ATTEST: JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

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

Howard Marshall in connection with Howard Marshall's sale of his Koch Industries stock to Decedent.

### 47.

Further, in the alternative and without waiving the preceding allegations, upon information and belief, the Marshall Living Trust is a sham which has been used by Pierce Marshall and other Defendants to perpetrate a fraud on Howard Marshall and others.

### 48.

Howard Marshall is informed and believes that Defendants contend otherwise.

### 49.

Howard Marshall requests a judicial declaration as to the validity of the purported Marshall Living Trust instrument and all amendments thereto, and specifically, Howard Marshall requests a declaration that the J. Howard Marshall, II Living Trust is void, and that any bequest under the purported will to such purported Marshall Living Trust lapsed, and that such invalidly bequeathed property of the Estate passes by intestacy. Further, Howard Marshall requests that the Court declare that Howard Marshall, Vickie Marshall and Pierce Marshall are the only heirs of the Decedent.

### 50.

Further, in the alternative and without waiving the preceding allegations, Pierce Marshall, Finley Hilliard, as trustee, and other Defendants attempted to change the situs of the purported Marshall Living Trust to Louisiana. Howard Marshall questions the validity of such attempt. However, in the event that the situs of the Decedent's assets was Louisiana at the time of his death, Howard Marshall requests a declaration of his forced

26

A CERTIFIED COPY

JUN 0 7 2001

ATTEST _____
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

EUGENE DOLANY JR

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

heirship rights and an award of his forced heir's share. Furthermore, Howard Marshall requests that the Court declare that the purported Marshall Living Trust is invalid under the laws of the State of Louisiana relating to trusts, transfers of property in trust, disposition of property and such other provisions of Louisiana law which may be presented to the Court.

## IMPOSITION OF A CONSTRUCTIVE TRUST

51.

Upon information and belief, most of Decedent's property and assets, including Decedent's stock in Marshall Petroleum, Inc. (and Koch Industries, Inc.), have been conveyed into the purported Marshall Living Trust for the benefit of Pierce Marshall after the Decedent's death. Many of the attempted transfers were invalid. In addition, the transfers constituted a breach of fiduciary duty by the Decedent, a breach of the promises made by the Decedent to Howard Marshall (at the time the Marshall Living Trust was made irrevocable if such transaction was valid) and fraud Further, it appears that Pierce Marshall and other Defendants orchestrated sales of Marshall Petroleum, Inc. stock from the purported Marshall Living Trust and other trusts to Marshall Petroleum, Inc. for absurdly inadequate consideration, thereby further dissipating Decedent's property and Estate. Because of the dealings of Pierce Marshall and other Defendants, Howard Marshall cannot determine how the Decedent's assets are currently held. Accordingly, Howard Marshall seeks a constructive trust on one-half of the assets conveyed to Pierce Marshall and his family (directly or indirectly) from the Decedent since December 1, 1980 whether held now by Pierce Marshall, Finley Hilliard, Ken Farrar, Elaine Marshall, Preston Marshall, E. Pierce Marshall, Jr., Marshall Petroleum, Inc., or others for the benefit of Pierce Marshall and his

A CERTIFIED COPY
ATTEST JUN 07 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE COOLEY JR.

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

family. Such claim is asserted against whichever person and/or entity currently holds the assets which should have passed to Howard Marshall.

TORTIOUS INTERFERENCE WITH CONTRACT

52.

Pleading in the alternative and without waiving the foregoing, pursuant to his contract with Decedent, Howard Marshall had a reasonable expectation to receive lifetime or testamentary transfers of the Decedent's property and assets equal to amounts received by Pierce Marshall. The actions of Defendants to induce Decedent to attempt to transfer much of his property and assets, directly or indirectly, to Pierce Marshall constitute tortious interference with Howard Marshall's contract with Decedent. If not for the conduct of Defendants, Decedent would not have breached his contract with Howard Marshall, and Howard Marshall would have received one-half of the property belonging to the Decedent. In addition, the actions of Defendants in attempting to hide assets and engage in fraudulent and collusive actions to avoid the contractual obligations of the Decedent constitute tortious interference with contract rights.

53.

Howard Marshall seeks damages against Defendants, and each of them, for tortious interference with contract in an amount according to proof, and not less than $500 million.

FRAUD AND FRAUDULENT TRANSFERS

54.

Upon information and belief, Defendants have engaged in conduct which was intended to defraud the Decedent's creditors including Howard Marshall Such conduct

A CERTIFIED COPY
ATTEST. JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

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

includes fraudulent transfers of assets, creating a sham administration of the purported Marshall Living Trust in Louisiana and a sham ancillary administration of the Decedent's estate in Louisiana, filing collusive lawsuits, filing ex parte lawsuits and attempting to enforce clearly invalid documents such as the fraudulent "Renunciation" document executed by Pierce Marshall as attorney-in-fact. Howard Marshall requests damages from the Defendants who have participated in this conduct or benefitted by their conduct.

TORTIOUS INTERFERENCE WITH INHERITANCE RIGHTS

55.

Pleading in the alternative and without waiving the foregoing, Howard Marshall had a reasonable expectation to receive approximately one-half of Decedent's property and assets. The actions of Defendants constitute tortious interference with Howard Marshall's inheritance rights. If not for the conduct of Defendants, Howard Marshall would have received one-half of the property belonging to the Decedent, gifts equal to those received by Pierce Marshall and his family and one-half of the property conveyed or attempted to be conveyed to the purported Marshall Living Trust The actions of Defendants were the proximate cause of the loss of inheritance by Howard Marshall. Further, in the alternative, the Defendants and the Decedent tortiously interfered with Howard Marshall's right to inherit from his mother by coercing her into an estate plan which did not treat her sons equally. The actions of the Defendants and Decedent were intentional and fraudulent.

A CERTIFIED COPY
ATTEST JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

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

56.

Howard Marshall seeks damages for tortious interference with inheritance rights against Defendants, and each of them, in an amount according to proof, and not less than $500 million. As to the claims relating to his mother's estate planning, damages are sought from the Decedent's estate and all Defendants.

CIVIL CONSPIRACY

57.

In the alternative, the conduct of Defendants described above constituted an agreement to commit unlawful acts and/or an agreement to commit lawful acts by illegal means. Accordingly, the Defendants' conduct constitutes a civil conspiracy to breach fiduciary duties, defraud Howard Marshall, and tortiously interfere with Howard Marshall's inheritance rights and contract rights. Howard Marshall seeks actual damages caused as a result of this conspiracy in an amount according to proof, and not less than $500 million.

DEFENDANTS' UNJUST ENRICHMENT

58.

In the alternative, the actions of Defendants and the Decedent were wrongful and designed to deprive Howard Marshall of his inheritance and the amounts promised to him by the Decedent Defendants have been unjustly enriched as a result of such wrongful actions. Accordingly, Howard Marshall requests that the Court impose a constructive trust on all assets wrongfully obtained by any of the defendants in this case (including E. Pierce Marshall, Marshall Petroleum. Inc , Elaine Marshall, Preston Marshall, E. Pierce Marshall, Jr., and the Decedent's estate).

A CERTIFIED COPY
ATTEST: JUN 07 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Deputy

EUGENE BOGANY JR

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

**BREACH OF FIDUCIARY DUTY BY HARVEY SORENSEN AND FOULSTON & SIEFKIN**

**59.**

Harvey Sorensen owed Howard Marshall fiduciary duties. Harvey Sorensen breached his fiduciary duties by failing to disclose to Howard Marshall that he was involved in a conspiracy to prevent Howard Marshall from receiving any stock of Marshall Petroleum, Inc. or Koch Industries, Inc. from his parents, that Harvey Sorensen was working for Pierce Marshall, and others, against Howard Marshall's interest when he owed duties to Howard Marshall, that he had participated in making misrepresentations to Mrs. Stevens concerning the value of the Marshall Petroleum, Inc. stock, and that he was working against the interests of Howard Marshall while serving as his trustee. Howard Marshall seeks damages against Harvey Sorensen, the law firm Foulston & Siefkin, and all of the Defendants named herein who participated in Harvey Sorensen's breach of fiduciary duty and conflicts of interest including efforts to conceal the wrongful conduct.

BREACH OF FIDUCIARY DUTY BY PIERCE MARSHALL, KEN FARRAR, AS TRUSTEE AND FINLEY HILLIARD, AS TRUSTEE

60.

As previously described, Howard Marshall is entitled to approximately one-half of all property and assets of the Decedent, which assets have been usurped and administered by Pierce Marshall, Finley Hilliard and Ken Farrar as trustees of the purported Marshall Living Trust and other trusts and entities used by them to avoid the obligations of the Decedent and his Estate As alleged herein Pierce Marshall has engaged in numerous acts of self-dealing and breaches of fiduciary duty to the damage of the Estate

A CERTIFIED COPY
ATTEST. JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOGANY JR

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

and Howard Marshall. Howard Marshall seeks damages for such breach of fiduciary duty against Pierce Marshall and seeks to rescind all actions taken by Pierce Marshall which constituted self-dealing or a breach of fiduciary duty. Finley Hilliard and Ken Farrar, as trustees, apparently allowed Pierce Marshall to do whatever he pleased with the assets of the purported Marshall Living Trust and participated in transactions which benefitted Pierce Marshall to the detriment of the Decedent, his Estate, his creditors and Howard Marshall. This constituted a breach of fiduciary duties by Finley Hilliard and Ken Farrar, as trustee. In addition, Pierce Marshall, Ken Farrar, as trustee, and Finley Hilliard, as trustee, are liable for negligence and gross negligence. Howard Marshall seeks damages for such conduct.

## PUNITIVE DAMAGES

### 61.

It is believed that the actions of Defendants were intentional and malicious. Accordingly, Howard Marshall seeks punitive damages.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

### 62.

Howard Marshall hereby seeks pre-judgment and post-judgment interest on the amounts awarded hereunder

## ATTORNEY FEES

### 63.

Howard Marshall hereby requests that he be granted his attorney fees and costs.

WHEREFORE, Howard Marshall prays as follows:

32

A CERTIFIED COPY

ATTEST: **JUN 0 7 2001**

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy

EUGENE BOGANY JR

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

(i) that the subject Application be denied;

(ii) that the Court order a full accounting of all assets of the Estate and of all property and assets of Decedent heretofore transferred to the purported Marshall Living Trust, to Pierce Marshall, or any of the other parties;

(iii) that the Court issue an Order imposing a constructive trust as requested above;

(iv) that the Court issue a judicial declaration that the J. Howard Marshall, II Living Trust is void and that all property of the Estate passes by intestacy as requested above. In the alternative, declare Howard Marshall's forced heirship rights and award his forced heir's share;

(v) that the contract between Howard Marshall and Decedent be specifically enforced against the parties under the doctrine of quasi-specific performance, and that a constructive trust be imposed on one-half of the assets transferred by Decedent to or for the benefit of Marshall Petroleum, Inc., Pierce Marshall and his family;

(vi) that Howard Marshall be awarded actual and punitive damages against the Defendants as requested herein,

(vii) that Howard Marshall recover his necessary expenses and disbursements in bringing this contest, including reasonable attorneys' fees;

(viii) that Howard Marshall be awarded pre-judgment and post-judgment interest on all amounts awarded; and

(ix) for such other and further Orders and relief as the Court may deem proper.

A CERTIFIED COPY
ATTEST JUN 07 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Deputy

EUGENE BOGANY JR

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

Respectfully submitted,

LAWTER & LAWTER

By: [signature]

Jack W. Lawter, Jr.
State Bar No. 12061300
Dianne W. Lawter
State Bar No. 21356575
700 Louisiana, Suite 2500
Houston, Texas 77002-2725
(713) 224-3500/(713) 224-3535 (fax)

GABRIEL, HERMAN & PERETZ
Avi S. Peretz
Dean B. Herman
John H. Odendahl
1800 Century Park East
Los Angeles, California 90067
(310) 286-1300 / (310) 286-1331

ATTORNEYS FOR J. HOWARD MARSHALL, III

A CERTIFIED COPY
ATTEST: JUN 07 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas
[signature] Deputy
EUGENE BOGANY JR

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

**CERTIFICATE OF SERVICE**

In compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure on February 13, 1998, this pleading was served upon the following:

Mr. Robert S. MacIntyre, Jr.
Brown, Parker &Leahy
1200 Smith - Suite 3600
Houston, Texas 77002

Mr. Dale Jefferson
Benckenstein & Oxford
1980 Post Oak Blvd.
Houston, Texas 77056

Ms. Elizabeth Tipton
Tipton & Gilbert, L.L.P.
3700 Buffalo Speedway, Suite 960
Houston, Texas 77098

Mr. Joseph Horrigan
Horrigan & Goehrs, L.L.P
1000 Two Houston Center
909 Fannin
Houston, Texas 77010

Mr. David J. Beck
Beck, Redden & Secrest
One Houston Center
1221 McKinney, #4500
Houston, Texas 77010

Mr. Gregg Laswell
Akin, Gump, Strauss, Hauer & Feld, L.L.P
1900 Pennzoil Place- South Tower
711 Louisiana
Houston, Texas 77002

Ms. Diana E. Marshall
Schecter & Marshall
3200 Travis
Houston, Texas 77006

Jack W. Lawter, Jr.
Dianne W. Lawter

A CERTIFIED COPY
ATTEST: JUN 07 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas
Deputy
EUGENE BOCANY JR

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

571449 NO. 276,815-402 PROBATE COURT #2

| | | |
|---|---|---|
| ESTATE OF J. HOWARD MARSHALL, II, DECEASED | § | IN THE PROBATE COURT |
| | § | |
| J. HOWARD MARSHALL, III | § | NUMBER TWO (2) OF |
| | § | |
| V. | § | |
| | § | |
| E. PIERCE MARSHALL, ET AL. | § | HARRIS COUNTY, TEXAS |

## FOURTH AMENDED CONSOLIDATED PETITION

TO THE HONORABLE JUDGE OF SAID COURT

COMES NOW, J. HOWARD MARSHALL, III. (hereinafter sometimes referred to as "Howard") and hereby files this Fourth Amended Consolidated Petition and would respectfully show unto the Honorable Court and jury the following

## STATEMENT OF THE CASE AND JURISDICTION

1.

This action relates to causes of action for breach of contract, tortious interference with contract, civil conspiracy, tortious interference with inheritance rights, breach of fiduciary duty and fraud. This is also a will contest, an action for declaratory relief and accounting, an action for the imposition of a constructive trust and for damages with respect to the Estate of J Howard Marshall, II and as against the Defendants named herein

2.

Howard brings this action to enforce his rights against J Howard Marshall, II's ("Decedent") Estate, to determine the property which should be included in the Decedent's

A CERTIFIED COPY
ATTEST. APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Deputy
CUC T LIEN

EXHIBIT
C

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

Estate, to determine proper disposition of such property, to recover damages against Decedent's Estate and Defendants and impose a constructive trust.

3.

This Court has jurisdiction over this matter pursuant to §5 and §5A of the Texas Probate Code. This action is an action for unliquidated damages against the personal representative of the Estate and for equitable relief against others and relates to the settlement, partition and distribution of the Decedent's Estate. This petition is filed pursuant to order of this Court consolidating this cause with cause no 276,815-404.

THE PARTIES

4.

PETITIONER

Petitioner, J. Howard Marshall, III, is a person interested in the Estate. Howard is the eldest son of the Decedent. Howard is domiciled and resides in Los Angeles County, California

5.

DEFENDANTS

The following persons and entities are named as defendants·

1. Robert S MacIntyre, Jr , in his capacity as temporary administrator of the Estate of J. Howard Marshall, II ("Decedent's Estate"). Mr MacIntyre has appeared and answered. 2 E Pierce Marshall, individually Upon information and belief, Pierce Marshall is the former trustee of a purported trust allegedly established by Decedent known as the J Howard Marshall, II Living Trust (hereinafter the "Marshall Living Trust"). Pierce

A CERTIFIED COPY

ATTEST APR 26 2001

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Deputy

CUC T. LIEN

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

Marshall has further acted as Decedent's purported "attorney-in-fact" pursuant to a power of attorney instrument signed by Decedent before his death. Pierce Marshall is sued in his capacities as former trustee of the Marshall Living Trust and as Decedent's "attorney-in-fact" under the purported power of attorney. E. Pierce Marshall is also named as a defendant in his capacity as trustee of the Marshall Grandchildren's Trust for the benefit of E. Pierce Marshall, Jr , as trustee of the Marshall Grandchildren's Trust for the benefit of Preston Marshall, as trustee of the Marshall Museum & Library Trust (formerly the Marshall Museum of Racing Trust), as trustee of the Marshall Petroleum, Inc. Stock Holding Trust, as trustee of the Bettye B. Marshall Living Trust (also sometimes referred to as the Bettye B. Marshall Estate Trust), as trustee of the J Howard Marshall, II, Marital Trust Number Two, and as trustee of the E. Pierce Marshall Family Trust created under the Bettye B. Marshall Living Trust Indenture dated October 30, 1990. E. Pierce Marshall has appeared and answered in all of the above-mentioned capacities (hereinafter referred to in all capacities as "Pierce").

3. Finley Hilliard, as trustee of the J. Howard Marshall, II Living Trust, as trustee (or former trustee) of the Marshall Petroleum, Inc Stock Holding Trust, as trustee of the Grantor Retained Annuity Trust, as trustee of the Charitable Lead Trust, as trustee of the J. Howard Marshall, II Liquidating Trust Number Two, and as Trustee of the J. Howard Marshall, II, Family Trust Finley Hilliard has appeared and answered in the above-mentioned capacities

4 Ken Farrar, as trustee of the J. Howard Marshall, II Living Trust, as trustee of the J. Howard Marshall, II Liquidating Trust Number One, and as Trustee of the J.

A CERTIFIED COPY
ATTEST: APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Cuc T. Lien Deputy
CUC T. LIEN

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

Howard Marshall, II Family Trust. Ken Farrar has appeared and answered in the above-mentioned capacities.

5.   Elaine T. Marshall, individually, as trustee of the Marshall Grandchildren's Trust for the benefit of E. Pierce Marshall, Jr, and as trustee of the Marshall Grandchildren's Trust for the benefit of Preston Marshall. Elaine T. Marshall has appeared and answered.

6.   Marshall Petroleum, Inc. also known as Trof, Inc. ("Marshall Petroleum, Inc."). Marshall Petroleum, Inc. has appeared and answered

7.   E. Pierce Marshall, Jr. E. Pierce Marshall, Jr. has appeared and answered.

8.   Preston Marshall. Preston Marshall has appeared and answered

9.   Eleanor Stevens has intervened as successor trustee of the Marshall Petroleum, Inc. Stock Holding Trust in the place of Finley Hilliard

10.   Defendant, Harvey Sorensen, is a resident of the State of Kansas. Upon information and belief, Harvey Sorensen is an attorney, and has at times relevant hereto, acted as counsel for Pierce Marshall, Decedent, Marshall Petroleum, Koch Industries and Eleanor P. Stevens ("Mrs. Stevens"), the mother of Howard and Pierce Marshall. In addition, at times relevant hereto, Harvey Sorensen has served as trustee of the Eleanor P. Stevens Irrevocable Gift Trust dated April 27, 1989, the Eleanor P. Stevens Irrevocable Gift Trust No. Two dated April 27, 1989 and the Eleanor P Stevens Revocable Gift Trust dated March 22, 1992, of which Howard is the beneficiary (hereinafter the "Stevens Trusts"). Harvey Sorensen has already appeared in this action

APETIT                                    4

A CERTIFIED COPY

ATTEST: _____ APR 2 6 2001 _____
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas


_____Cuc T Lien)_____ Deputy
        CUC T. LIEN

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

11. Defendant Foulston & Siefkin, L.L.P., is a law firm, having its principal place of business in Wichita, Kansas. Upon information and belief, at times relevant hereto, Foulston & Siefkin has acted as counsel for Pierce Marshall, Decedent, Marshall Petroleum, Koch Industries and for Mrs. Stevens. Upon information and belief, Foulston & Siefkin has also acted as counsel for the Stevens Trusts and/or as counsel for Harvey Sorensen as trustee of the Stevens Trusts. Foulston & Siefkin, L.L.P. has already appeared in this action.

12. Edwin Hunter. During discovery in this case, Howard has discovered that this Defendant has been actively involved in the transactions and occurrences complained of in this case. Edwin Hunter has already appeared in this action

13. Charles Koch. Charles Koch has already appeared in this action

14. Donald Cordes. Donald Cordes has already appeared in this action

15. Koch Industries, Inc. Koch Industries, Inc. has already appeared in this action.

16. Dr. Steven Cook, as trustee of the Marshall Museum & Library Trust. Dr. Steven Cook may be served with citation at his address of 1807 Lake Street, Lake Charles, LA 70601. Pierce Marshall has continued to file pleadings in this case as trustee of the Marshall Museum & Library Trust. However, Plaintiff has seen documentation that indicates that Dr. Cook is now the trustee of the Marshall Museum & Library Trust.

17. All of the named defendants noted above in all capacities set forth above are referred to collectively as "Defendants".

A CERTIFIED COPY
ATTEST: APR 26 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Deputy
CUC T. LIEN

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

18. Defendants Pierce Marshall, Finley Hilliard, Ken Farrar, Marshall Petroleum, Inc., Harvey Sorensen, Foulston & Siefkin and Edwin Hunter in all capacities set forth above are hereinafter referred to collectively as "Marshall Defendants"

19. Charles Koch, Donald Cordes and Koch Industries, Inc. are referred to collectively as "Koch Defendants".

6.

In addition to the Defendants named herein, Howard is informed and believes and thereon alleges that other presently unknown persons/defendants (whether individual, corporate or otherwise) participated in the conduct and transactions alleged herein to cause damage and injury to Howard, and that said other persons/defendants are jointly and severally liable, along with the named Defendants, for all damages and relief alleged herein. Howard will amend this Petition to identify said persons/defendants' true names and capacitates when such information has been ascertained.

DECEDENT'S ESTATE

7.

The personal representative of the Decedent's Estate in Texas is a necessary party to this action Robert S. MacIntyre, Jr., as temporary administrator of the Estate of J. Howard Marshall, II (the "Administrator") is named as a party to this action. To the extent claims are alleged against the Decedent or the Decedent's Estate, the Administrator is a defendant. However, the Administrator is an interested party or involuntary plaintiff in other claims asserted herein on behalf of the Estate Howard requested that the Administrator pursue actions on behalf of the Estate and Howard has brought certain actions based on

A CERTIFIED COPY
ATTEST: APR 26 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Cuc T. Lien Deputy
CUC T. LIEN

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

the Administrator's failure to pursue such actions.  Robert S. MacIntyre, Jr., temporary administrator of the Estate of J. Howard Marshall, II has appeared in this action.

## INTERESTED PARTIES

### 8.

Howard is informed and believes that the following persons are interested parties to this action:

(a)  Vickie Lynn Marshall a/k/a Anna Nicole Smith (hereinafter "Vickie Marshall").  Vickie Marshall is the widow of Decedent.  Vickie Marshall has appeared in this action.

(b)  Mr. Dan Manning.  Dan Manning has been served

(c)  Ms. Mabel H. Bohannan.  Mabel Bohannan has been served

(d)  Ms. Ada Estes.  Ada Estes has entered an appearance.

(e)  Ms Gladys Estes.  Gladys Estes is believed to be deceased.

(f)  Mr. James W. Lee.  James W Lee has entered an appearance

(g)  Haverford College.  Haverford College may be served with citation at its business address of 370 Lancaster Avenue, Haverford, PA 19041

(h)  The George School.  The George School may be served with citation at its business address of Box 4449, Newton, PA 18940.

(i)  Judy Wilson.  Judy Wilson may be served at 8323 Twining Oak Lane, Spring, TX 77379

(j)  Carolyn Lee.  Carolyn Lee may be served at 311 W 85th, New York, NY 10024.

4APETIT                                         7

A CERTIFIED COPY

ATTEST: ___APR 2 6 2001___
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_Cuc T Lien_ _____ Deputy
CUC T. LIEN

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

(k) Kay Lee Rains. Kay Lee Rains may be served at 9017 Brent Meade Boulevard, Brentwood, TN 37027.

The Attorney General for the State of Texas has been notified of this proceeding pursuant to § 123.003 of the Texas Property Code.

9.

Howard is informed and believes that there may exist other presently unknown persons who may be interested parties in this action. Howard will amend this Petition to identify said persons when their identities have been ascertained.

FACTUAL BACKGROUND

10.

Decedent died on or about August 4, 1995, in Houston, Harris County, Texas. Decedent's domicile was Houston, Harris County, Texas. At the time of his death, Decedent was ninety years old Decedent had two children, Howard and E. Pierce Marshall ("Pierce").

11.

During his lifetime, Decedent amassed a huge fortune, becoming one of the wealthiest men in the United States. The bulk of Decedent's fortune consisted of and was derived from Decedent's direct and indirect shareholder interest in Koch Industries, Inc.

A CERTIFIED COPY

ATTEST: APR 26 2001

BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Deputy

CUC T. LIEN

. I-66-0873

CHRONOLOGY OF COMPLAINED EVENTS

12.

In 1980, a dispute arose among the voting stockholders of Koch Industries. At that time, Koch Industries was managed by Charles Koch and the Decedent sat on the Board of Directors.

13.

Briefly stated, a group of stockholders led by William I. Koch ("Bill Koch"), who held approximately 48% of the voting shares of Koch Industries, expressed concern over Koch Industries and the lack of liquidity of the Koch Industries stock. Beginning in or about 1980, such shareholders desired to e: pand the board of directors to establish a method for establishing liquidity for the shareholders and possibly to have management take the company public. At that time, Howard held approximately 4% of the voting stock of Koch Industries, and had the requisite voting shares to determine the outcome of the stockholder dispute. If Howard would have joined the Bill Koch group of shareholders, said shareholders would have had the requisite majority interest to control the election of directors of the company.

14.

When the dispute became known to the Decedent, the Decedent requested that Howard vote his shares in support of Charles Koch Howard, however, believed that the shareholders led by Bill Koch had legitimate grievances and concerns, and would not agree to vote his stock in favor of Charles Koch. The Decedent then threatened to disinherit Howard if Howard did not cooperate.

A CERTIFIED COPY
ATTEST: APR 2 [illegible]
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

[signature] Deputy
CUC T. LIEN

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

15.

Thereafter, on or about December 1, 1980, the Decedent met with Howard for the purpose of inducing Howard to sell his stock to Decedent. At that time, Howard had a close, confidential relationship with his father and trusted his father to fulfill all of the promises he made to Howard. In addition, the Decedent was then a director of Koch Industries, a Kansas corporation, and was a lawyer licensed to practice law in California. The Decedent owed Howard, as a shareholder of Koch Industries, a strict fiduciary duty Further, for many years the Decedent had acted as trustee for Howard with regard to investments by Howard in various business ventures. Decedent also served as trustee for Howard with regard to Trust B which was established under the property settlement agreement dated January 1, 1961 between Decedent and Eleanor P Marshall. Decedent was serving in such position on December 1 and 2, 1980

16.

At their meetings in December 1980, Decedent offered to purchase Howard's stock in Koch Industries for $8 million cash. As further consideration for his purchase of Howard's stock, Decedent represented and promised to Howard that Decedent would treat his sons, Howard and Pierce, equally as regards Decedent's estate planning and property. Other terms of the agreement were also agreed upon by Howard and the Decedent. The terms of the agreement can be briefly summarized as follows

A. Howard agreed to sell and the Decedent agreed to purchase all of Howard's holdings in Koch Industries (common, preferred, voting and nonvoting shares)

A CERTIFIED COPY
ATTEST APR 26 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Cuc T. Lien Deputy
CUC T. LIEN

. I-66-0873

## CHRONOLOGY OF COMPLAINED EVENTS

12.

In 1980, a dispute arose among the voting stockholders of Koch Industries. At that time, Koch Industries was managed by Charles Koch and the Decedent sat on the Board of Directors.

13.

Briefly stated, a group of stockholders led by William I. Koch ("Bill Koch"), who held approximately 48% of the voting shares of Koch Industries, expressed concern over Koch Industries and the lack of liquidity of the Koch Industries stock. Beginning in or about 1980, such shareholders desired to e: pand the board of directors to establish a method for establishing liquidity for the shareholders and possibly to have management take the company public. At that time, Howard held approximately 4% of the voting stock of Koch Industries, and had the requisite voting shares to determine the outcome of the stockholder dispute If Howard would have joined the Bill Koch group of shareholders, said shareholders would have had the requisite majority interest to control the election of directors of the company.

14.

When the dispute became known to the Decedent, the Decedent requested that Howard vote his shares in support of Charles Koch Howard, however, believed that the shareholders led by Bill Koch had legitimate grievances and concerns, and would not agree to vote his stock in favor of Charles Koch The Decedent then threatened to disinherit Howard if Howard did not cooperate.

A CERTIFIED COPY
ATTEST: APR 2 ( 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Deputy
CUC T. LIEN

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

B. The Decedent agreed to pay $8 million in cash consideration.

C. The Decedent agreed that Pierce and Howard would participate equally in the Decedent's estate planning and property.

D. The Decedent agreed to use his best efforts to minimize estate taxes and provide sufficient liquidity in his estate in order to handle taxes which could not be avoided.

E. The Decedent agreed to obtain the agreement of Charles Koch to treat the shareholders fairly.

F. The Decedent agreed that the Decedent would provide and he would obtain from Charles Koch an agreement to provide Howard with an indemnity in case Howard was drawn into any lawsuits involving the calling of the special stockholders meeting and the sale of Howard's stock and the various activities at the end of 1980

G. The Decedent agreed to provide Howard's mother an annual income of a hundred thousand per year after taxes with an inflationary correction.

17.

The cash consideration of $8 million offered by Decedent was far below the fair market value of the stock, and was far below what Howard could have otherwise obtained by selling his shares to, or voting with, the Bill Koch group of shareholders In fact, Bill Koch at that time had offered Howard a substantially higher cash price for such stock. Howard agreed to sell his shares to Decedent upon the terms set forth above In agreeing to sell his shares to Decedent, Howard reasonably and justifiably relied on Decedent's

A CERTIFIED COPY

ATTEST. APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Cuc T Lien Deputy
CUC T. LIEN

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

promise and agreement that Decedent would treat Howard and Pierce equally as regards Decedent's estate planning and property. Howard wanted to be certain that the Decedent had rescinded his threat of disinheritance (made less than one week earlier) and was satisfied that the Decedent would comply with his promise. Absent the promises and agreement of Decedent, Howard would not have sold his stock to Decedent. It was understood between Howard and the Decedent that gifts to Pierce's wife and children were the equivalent of gifts to Pierce. Likewise, gifts to Howard's wife were the equivalent of gifts to Howard.

18.

Furthermore and in the alternative, the Decedent breached his fiduciary duties to Howard by making false promises to Howard, failing to make full and frank disclosure of material facts, failing to insure that Howard was adequately represented and protected in the transaction, failing to deal fairly and in good faith with Howard, failing to pay a fair price and failing to insure that the transaction was fair Charles Koch and Donald Cordes who also owed fiduciary duties to Howard as directors and officers of Koch actively participated in this transaction and benefitted from the transaction

19.

Howard's sale of his Koch Industries stock to Decedent was a definitive contractual agreement between a father and a son who trusted him Howard completely performed his side of the contract with the Decedent by delivering to Decedent the agreed upon shares. Further, at the time of delivery, Decedent paid Howard $8 million in cash and complied with the terms of the agreement regarding the indemnity and agreement from

A CERTIFIED COPY
ATTEST: APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

CUC T. LIEN Deputy

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

Charles Koch relating to the Bill Koch group of shareholders. Howard reasonably and justifiably relied on the promises and representations made by Decedent.

20.

However, Howard has subsequently learned that after Howard and Decedent made their contract in 1980, the Decedent breached his contract with Howard, or, alternatively, that the promises and representations made to Howard by his father were false and made with no intention of fulfilling the promises. The Decedent accomplished this through a series of lifetime transfers of assets to Pierce and his family (outright and in trust). After the death of the Decedent, Howard learned that the Decedent had a pattern or habit of insisting upon oral contracts, entering into oral contracts and breaching such contracts if he felt like doing so. The Decedent's conduct shows a pattern of deception consistent with his conduct towards Howard when the Decedent wanted to acquire Howard's shares in Koch Industries, Inc. The Decedent induced others to rely on his promises just like he induced Howard to act in reliance upon his promises

21.

Beginning in the early 1980s, the Decedent began to behave irrationally and to suffer from diminished mental capacity and dementia The Decedent also drank alcohol to excess Pierce has admited that the Decedent was subject to undue influence since 1982. Upon information and belief, all of the Defendants were aware of the Decedent's alcohol problem, dementia and his susceptibility to undue influence

A CERTIFIED COPY
ATTEST: APR 26 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

[signature] Deputy
CUC T LIEN

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

**22.**

Further, upon information and belief, in or about 1982, Decedent purportedly created the J. Howard Marshall II Living Trust ("Marshall Living Trust"). The purported Marshall Living Trust was allegedly created to receive most or all assets and property of the Decedent. By its terms, the purported Marshall Living Trust was for the benefit of the Decedent for life and then at his death attempts to pass almost all the Decedent's estate to Pierce, to the exclusion of Howard. By its terms, the purported Marshall Living Trust was revocable by the Decedent until July of 1994. On July 13, 1994, the Decedent executed a document which if valid made the purported Marshall Living Trust irrevocable Because the Marshall Living Trust purported to hold most of the Decedent's assets, any document making such Trust irrevocable was a breach of contract as of the Decedent's date of death. The actual transfer to Pierce occurred upon the Decedent's date of death, August 4, 1995, according to the trust instrument. Even though gifts and transfers were made to Pierce and his family prior to July 13, 1994, without corresponding gifts to Howard, it is believed that the Decedent still had control of sufficient assets to make equalizing gifts, transfers or bequests to Howard until he divested himself of control of his assets by making the purported Marshall Living Trust irrevocable on July 13, 1994 Under the contract, the Decedent was free to make equalizing gifts or transfers to Howard by will or by lifetime transfers. Because of the Decedent's rights to distributions and to change the beneficiaries of the Marshall Living Trust under the trust instrument, the first time a breach of contract could be ascertained with any certainty was at the Decedent's death. Further, the funding

A CERTIFIED COPY

ATTEST APR 26 2001

BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Cuc T. Lien Deputy
CUC T. LIEN

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

22.

Further, upon information and belief, in or about 1982, Decedent purportedly created the J Howard Marshall II Living Trust ("Marshall Living Trust"). The purported Marshall Living Trust was allegedly created to receive most or all assets and property of the Decedent. By its terms, the purported Marshall Living Trust was for the benefit of the Decedent for life and then at his death attempts to pass almost all the Decedent's estate to Pierce, to the exclusion of Howard. By its terms, the purported Marshall Living Trust was revocable by the Decedent until July of 1994. On July 13, 1994, the Decedent executed a document which if valid made the purported Marshall Living Trust irrevocable. Because the Marshall Living Trust purported to hold most of the Decedent's assets, any document making such Trust irrevocable was a breach of contract as of the Decedent's date of death. The actual transfer to Pierce occurred upon the Decedent's date of death, August 4, 1995, according to the trust instrument. Even though gifts and transfers were made to Pierce and his family prior to July 13, 1994, without corresponding gifts to Howard, it is believed that the Decedent still had control of sufficient assets to make equalizing gifts, transfers or bequests to Howard until he divested himself of control of his assets by making the purported Marshall Living Trust irrevocable on July 13, 1994 Under the contract, the Decedent was free to make equalizing gifts or transfers to Howard by will or by lifetime transfers Because of the Decedent's rights to distributions and to change the beneficiaries of the Marshall Living Trust under the trust instrument, the first time a breach of contract could be ascertained with any certainty was at the Decedent's death Further, the funding

A CERTIFIED COPY

ATTEST. APR 26 2001

BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Cuc T Lien Deputy

CUC T. LIEN

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

of the supposedly irrevocable Marshall Living Trust in 1994 was defective resulting in little, if any, property passing under the trust.

23.

The Decedent made inter vivos transfers of property, directly and indirectly, to Pierce and his family for less than full and adequate consideration. The Decedent also made transfers to Pierce indirectly through Marshall Petroleum, Inc. and disguised such transfers as compensation. Many of the transactions lacked economic substance and were sham transactions. Such transfers were effectively gifts to Pierce (outright and in trust). Consequently, such transfers constituted violations of the Decedent's contractual agreement with Howard as of the time of death.

24.

The Decedent entered into various complex business arrangements designed to restrict the control of the Decedent's assets and the marketability of the Decedent's assets Such restrictions and arrangements favor Pierce over Howard Many of such restrictions and arrangements involve the assets placed in Marshall Petroleum, Inc. Such restrictions and arrangements lacked economic substance and were not bona fide, arms-length transactions. Marshall Petroleum, Inc. is a personal holding company created primarily for estate planning purposes and to place Pierce in control of the Koch Industries stock. Apparently, the Decedent placed many of his most valuable assets including his stock in Koch Industries in this personal holding company The Decedent controlled Marshall Petroleum, Inc. and treated the assets of the personal holding company as his own until shortly before his death when Pierce assumed complete control. Marshall Petroleum, Inc.

A CERTIFIED COPY
ATTEST: APR 2 6 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Cuc T Lien Deputy
CUC T. LIEN

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

26.

At all times it has been Mrs. Stevens' intent and desire to treat her sons Howard and Pierce equally in her estate planning, so that each of her sons receive financial equivalents from her estate and trusts. Mrs. Stevens, however, had little knowledge or understanding of her business interests and instead relied upon advisors, including the Decedent and Defendants herein. Howard is informed and believes however, and thereon alleges, that in an effort to receive and control Mrs. Stevens' Koch Industries stock (held in Marshall Petroleum), that Pierce, Harvey Sorensen, Foulston & Seifkin, Edwin Hunter, the Decedent and others made misrepresentations to Mrs. Stevens regarding the value of her interest in Koch Industries stock, and have othrrwise wrongfully induced Mrs. Stevens to gift her interest in the valuable Koch Industries stock (valued at tens of millions of dollars) to Pierce, while giving Howard an unsecured $6 million debenture which does not mature until 2009 and issued by Marshall Petroleum, a privately held company controlled by Defendant, Pierce. Upon information and belief, Edwin Hunter participated after the fact to perpetuate the myth that the trusts created by Mrs Stevens treated her sons fairly.

27.

More specifically, Howard is infonned and believes that Pierce, Harvey Sorensen, Foulston & Seifkin, the Decedent, Finley Hilliard and Edwin Hunter have misrepresented to Mrs. Stevens that she could make an equal distribution of her property to her two sons by giving Pierce her stock in Marshall Petroleum (and thus her interest in Koch Industries) and by giving Howard a Marshall Petroleum unsecured debenture with a face value of $6 million

A CERTIFIED COPY

ATTEST: APR 2 6 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Cuc T Lien Deputy
CUC T. LIEN

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

was used by the Decedent as a vehicle to transfer assets to Pierce and his family.  The Decedent participated in such activities as director and chief executive officer of Marshall Petroleum, Inc.  The Decedent failed to take steps to give Howard any of the stock of Marshall Petroleum, Inc. and failed to give Howard equal control of the assets held in the personal holding company.  Upon information and belief, the assets in Marshall Petroleum, Inc. and other trust entities controlled by Pierce are in danger of being lost, removed or materially injured.  Howard has a right to a substantial portion of such assets.  Marshall Petroleum, Inc. has been used as a sham to perpetuate a fraud, resulting in an inequitable result insofar as Howard is concerned

### 25.

Furthermore, upon information and belief, such attempted transactions were not limited to the assets owned by the Decedent.  Howard's mother, Mrs. Stevens, owned a substantial portion of Koch Industries stock either directly or through Marshall Petroleum. At times relevant hereto, one of the lawyers for Mrs. Stevens has been Harvey Sorensen. Upon information and belief, Harvey Sorensen and his firm  Foulston & Siefkin, are believed to have also served as counsel for Koch Industries, Charles Koch, Marshall Petroleum, Pierce Marshall and the Decedent and other related parties.  Harvey Sorensen was also the trustee of the Stevens Trusts, of which Howard is a beneficiary.  Another lawyer for Mrs. Stevens was Edwin Hunter   Edwin Hunter is believed to have also served as counsel for Marshall Petroleum, Pierce Marshall, Finley Hilliard and the Decedent

16

A CERTIFIED COPY

ATTEST  APR 2 6 2001
BEVERLY B. KAUFMAN. County Clerk
Harris County, Texas


CUC T. LIEN                          Deputy

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

28.

Upon information and belief, the stock which Mrs. Stevens has been advised and induced to leave to Pierce has a value of tens of millions of dollars and will be received by Pierce in 1999. In contrast, the purported $6 million debenture which Mrs. Stevens has been advised and induced to leave to Howard is, most likely, without substantial value. The debenture is unsecured, and does not mature until the year 2009. Moreover, as Pierce controls Marshall Petroleum, he has the power to dissipate all assets of Marshall Petroleum to ensure that said debenture never pays off.

29.

The object of the misrepresentations to Mrs Stevens was to mislead Mrs Stevens as to the true value of her stock, to keep Howard from receiving any shares of Marshall Petroleum and/or Koch Industries stock, and to see that said stock was passed to Pierce. The wrongful actions of Foulston & Seifkin, Harvey Sorensen and Edwin Hunter should be attributed to their clients who had interests adverse to Howard These clients of Edwin Hunter included Pierce, Marshall Petroleum, Inc., Finley Killiard, Ken Farrar and trusts and entities related to such parties. The clients of Harvey Sorensen and Foulston & Seifkin who benefited from the wrongful conduct included Pierce, Marshall Petroleum, Inc., Koch Industries, Inc , Charles Koch, Donald Cordes and trusts and entities related to such parties

30.

The wrongful transactions relating to the Decedent's property alleged herein were designed in order that Pierce would obtain the entirety of Decedent's property and were

A CERTIFIED COPY
ATTEST. APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Cuc T Lien Deputy
CUC T. LIEN

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

in violation of the rights and expectancy of Howard. Furthermore, following Decedent's marriage to Vickie Marshall, Pierce, Finley Hillard, Edwin Hunter and Marshall Petroleum, Inc. took further steps to exercise control over Decedent and his property. Such transactions were designed not only to prevent Decedent from giving any of his property to his wife, but to further prevent Decedent from abiding by his prior agreement with Howard regarding the disposition of his estate.

31.

Beginning in 1994, Pierce and other Marshall defendants caused the Decedent to sign a series of some of the most overreaching documents that can be imagined. This occurred after Pierce and Foulston & Se fkin obtained an expert medical opinion that the Decedent was suffering from dementia and had been susceptible to undue influence since 1982. For instance, the Decedent signed an Act of Procuration (hereinafter the "Power of Attorney") naming Pierce as attorney in fact. The Power of Attorney included a provision which stated that Decedent could not revoke the document without a letter from a psychiatrist with at least 20 years of clinical experience stating that he was of sound mind and not subject to duress Decedent also signed a document which purported to make his revocable management trust completely irrevocable The Decedent also apparently signed a document resigning as a trustee of the purported Marshall Living Trust that held most of his assets (according to Defendants) thereby leaving Pierce in complete control of Decedent's property

32.

None of these or the other documents or transactions that Pierce, Foulston &

A CERTIFIED COPY
ATTEST. APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Cuc T Lien Deputy
CUC T. LIEN

The header at the top is partially illegible navigation text.

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

Seifkin, Harvey Sorensen, Edwin Hunter and Finley Hillard caused the Decedent to sign were of any benefit to the Decedent. In fact, they had immediate and detrimental effect on the Decedent. Instead, such transactions served to benefit only Pierce and other Defendants acting in concert with him.

### 33.

Moreover, throughout all times that Pierce and Finley Hilliard have acted as trustees under the purported Marshall Living Trust, the actions of said trustees have been marked by a total disregard for the Decedent and blatant self-dealing transactions by Pierce.

### 34.

Among the most outrageous of Pierce's self-dealing transactions involved a sale of Marshall Petroleum, Inc. stock from the purported Marshall Living Trust to Marshall Petroleum, Inc., which occurred even before the death of the Decedent. The trustees (Pierce and Finley Hilliard) sold the Decedent's shares of Marshall Petroleum, Inc. stock to Marshall Petroleum, Inc. (by Pierce as chief executive officer) in exchange for an annuity for Mr. Marshall's life in the amount of $7.8 million per year for the first year, increasing by 20% for each year thereafter. While the agreement for the sale of such stock provided that the stock had a total value of $33 million, Howard believes that the actual value of such stock was well in excess of $33 million. Notably, Pierce arranged this sale at a time when he knew that the Decedent was dying. In fact, Pierce was at that same time representing to the probate court in a guardianship proceeding that Mr. Marshall was terminally ill. The consideration paid for the Decedent's Marshall Petroleum stock (approximately $1.5 million) was a tiny fraction of the value of the shares sold. This transaction was an

AAPETIT                                    20

A CERTIFIED COPY

ATTEST: __APR 2 6 2001__
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

_CUC T. Lien_ _____ Deputy
CUC T. LIEN

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

absolutely miserable deal for the Decedent and the purported Marshall Living Trust and demonstrates that the existence of the purported Marshall Living Trust was a fiction and that it was in fact administered solely for the benefit of Pierce and other Marshall Defendants acting in concert with him. This transaction was one of many similar improper transactions arranged by Pierce and the other Marshall Defendants.

### 35.

Another example of Pierce's self-dealing and improper usurpation of Decedent's property was the creation of the purported Marshall Museum of Racing. Less than three (3) months before Decedent died, and while Pierce was supposed to be acting in his father's best interest, Pierce, using his power of attorney, "amended" the purportedly then "irrevocable" Marshall Living Trust to create a new beneficiary -- the Marshall Museum of Racing. Race cars are a hobby of Pierce. The Decedent expressed to Howard (and others) that he considered Pierce's fascination with race cars a monumental waste of time and money. However, Pierce and Finley Hilliard, as trustees, have usurped the Decedent's money to create and fund this "museum." It is believed that this "museum" was nothing more than a way for Pierce to play with his race cars at the Decedent's expense and to the Decedent's detriment. Thus, Pierce used the Decedent's assets for something that Decedent would have never allowed and which provided no benefit to the Decedent. Pierce has paid two of his personal discovery sanctions from this entity. Pierce has personally taken control of the assets transferred to such entity. Accordingly, for purposes of this action, any assets transferred to such entity should be considered by the court as a transfer of assets to Pierce.

A CERTIFIED COPY

ATTEST: APR 2 6 2001

BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

_Cuc T Lien_  Deputy

CUC T. LIEN

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

36.

Pierce also executed a document in which, as attorney in fact for the Decedent, Pierce attempted to amend the supposedly irrevocable purported Marshall Living Trust. Such document was designed to be a fraud on the Decedent's creditors. Finley Hilliard, as trustee, and Edwin Hunter participated in this fraudulent transaction with Pierce as well as some of the other Marshall Defendants. This document was designed to enrich Pierce at the expense of his father and his father's creditors, including Howard.

37.

Finally, at all relevant times, Pierce has controlled the purported Marshall Living Trust and Decedent's property in a manner directly contrary to the Decedent's intended and agreed upon disposition of his estate Among other things, while Pierce was transferring Decedent's property to himself and his businesses Pierce has prevented any of Decedent's property from passing to Haverford College and the George School, notwithstanding that Decedent, prior to his death, pledged monies to those institutions. Finally, Pierce, and other Defendants acting in concert with him, have sought to exclude Howard from receiving any portion of his father's estate despite the fact that the Decedent represented, promised and contractually agreed that Howard would be treated equally to Pierce and his family as regards Decedent's estate and property.

38.

KOCH INDUSTRIES, INC., CHARLES KOCH AND DONALD CORDES

After the 1980 transaction between Howard and the Decedent, Charles Koch and Donald Cordes determined that it was in their best interests and in the best interests of the persons in control of Koch Industries, Inc. if none of the Koch Industries, Inc stock held by

A CERTIFIED COPY

ATTEST: APR 2 6 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Cuc T Lien Deputy
CUC T. LIEN

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

the Marshall family passed to Howard. Beginning in 1982, at a time when even Pierce acknowledges that the Decedent was subject to undue influence, these Defendants set about to rewrite the Decedent's estate plan to suit their purposes and the purposes of their friend, Pierce. They acted initially through Donald Cordes and then acted through their conflicted attorneys, Foulston & Seifkin, L.L.P. Upon information and belief, Charles Koch, Donald Cordes and Koch Industries, Inc. also participated in and are liable for the wrongful actions and breaches of fiduciary duty by their attorneys and agents, Foulston & Seifkin, L.L.P. and Harvey Sorensen, relating to the property and trusts of the Decedent and Mrs. Stevens. At all relevant times, Charles Koch and Donald Cordes were officers or directors of Koch Industries, Inc. and often were acting on behalf of the corporation.

## 39.

These Defendants not only participated in the tortious conduct described herein, but they were voluntary participants in one of Pierce Marshall's fraudulent schemes to cheat his brother. The case on Howard's breach of contract, fraud and breach of fiduciary duty claims was set for trial on December 8, 1997. The primary remedy sought was a constructive trust over certain shares of stock in Koch Industries, Inc. On December 5, 1997, a special meeting of the shareholders of Koch Industries, Inc. was called and a 10 for 1 stock split was declared (effective December 8, 1997, the first day of trial). This meant that Howard's request for a constructive trust was only one-tenth of the proper number of shares (unbeknownst to Howard and his counsel). Pierce did not disclose to Howard that the stock split occurred even though the trial was postponed. Pierce withheld all information about the stock split and wrongfully failed to supplement discovery responses which would have revealed the stock split. When the case went to trial in the

AAPETIT                                    23

A CERTIFIED COPY

ATTEST.   APR 2 6 2001
_____
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

_____*Cuc T dren*_____ Deputy
CUC T. LIEN

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

summer of 1988, Pierce had never revealed the stock split. During trial, Pierce provided Howard with false financial information intended to hide the existence of the stock split and the fact that Howard was requesting only one-tenth of the number of shares he was entitled to receive. Every financial number given to Howard by Pierce was false and designed to deceive. The Defendants' scheme failed only because the trial ended in a mistrial caused by the misconduct of the defendants in that case. Howard ultimately discovered the truth about the stock split after the mistrial.

**40.**

In the alternative, Charles Koch and Donald Cordes, as officers and directors of Koch Industries, Inc., owed fiduciary duties to Howard in 1980. Charles Koch and Donald Cordes participated in and benefitted from the breach of fiduciary duty and fraud of the Decedent. As of the Decedent's date of death, the stock transaction in 1980 was unfair to Howard because the Decedent did not comply with his promises. The conduct of Charles Koch and Don Cordes in 1980 constituted breach of fiduciary duty and fraud.

**41.**

Information implicating Charles Koch, Donald Cordes and Koch Industries, Inc. in the wrongful conduct alleged herein was first discovered by Howard when the files of attorney, Gene Jones, were produced in discovery in the fall of 1997. The stock split scheme was discovered in 1998.

### CALIFORNIA LAW APPLIES

**42.**

Howard is and was a resident of the State of California. The Decedent came to California to meet with Howard to enter into the agreement in 1980. All negotiations

44PET!!                                        24

A CERTIFIED COPY

ATTEST: _APR 2 6 2001_____
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____CUC T. LIEN_____ Deputy
CUC T. LIEN

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

and by not giving Howard an amount of property equal to what Pierce and his family had received since 1980.

45.

But for the representations by the Decedent concerning his estate planning and the other terms of the agreement, Howard would not have sold his shares of Koch Industries to Decedent, but would have instead retained his shares and voted with the Bill Koch group of shareholders to enlarge the board of directors of Koch Industries and provide for liquidity of the stock of Koch Industries, or would have sold his shares to the highest bidder. In either event, Howard would have received substantially more for his Koch Industries shares than $8 million

46.

As a result of Decedent's breach of contract, Howard has suffered damages. However, Howard's remedy at law would be inadequate Because of the unique nature of the Marshall Petroleum, Inc and Koch Industries assets, the unique situation Howard was in at the time of the contract (the swing vote in the Koch Industries shareholder dispute), and the current financial situation of the probate estate, Howard requests specific performance of the contract. In order to enforce the contract and to require specific performance, the Court should impose a constructive trust on one-half of the assets transferred by the Decedent, directly or indirectly, to Pierce and his family since December 1, 1980 (including income and the proceeds of the sale of any transferred property). Such constructive trust should be imposed on one half of the assets of the Defendants received from Decedent (either directly or indirectly) (including the Decedent's Estate) under the doctrine of quasi-specific performance. Because the Decedent promised to treat Howard

A CERTIFIED COPY
ATTEST. APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

[signature] Deputy
CUC T. LIEN

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

between Howard and the Decedent occurred in California. Moreover, Howard performed his part of the agreement in California and Decedent performed at least part of the agreement (the payment of $8 million to Howard and other actions) in California. As to the alternative claims of fraud and breach of fiduciary duty, false representations and false promises were made to Howard by the Decedent in California. Howard relied on such false representations and promises in California. Under the choice of law rules, California law applies to the breach of contract, breach of fiduciary duty by Decedent and fraud by Decedent.

BREACH OF CONTRACT

43.

As set forth herein above, in 1980 Howard contracted to sell his shares of Koch Industries to the Decedent in exchange for the Decedent's agreement to pay to Howard $8 million cash, and Decedent's further agreement that Decedent would treat his sons, Howard and Pierce, equally as regards Decedent's estate planning and property (as well as other terms not relevant to this proceeding). The contract was definite. The contract terms were just and reasonable and such contract was supported by adequate consideration

44.

Howard completely performed his side of the contract with Decedent. Decedent, however, subsequently breached his contract with Howard by making the purported Marshall Living Trust irrevocable (if it is valid), which purported trust instrument attempts to leave most of Decedent's property and assets to Pierce after the death of the Decedent

A CERTIFIED COPY

ATTEST: APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Deputy
CUC T. LIEN

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

equally, all restrictions on the assets transferred restricting the control or marketability of the assets should be removed by the Court as to the assets equitably passing to Howard. Alternatively, Howard seeks damages from the Decedent's Estate for the breach of contract by the Decedent and interest on such funds from the time of the breach until final judgment. The constructive trust and/or damages should be in an amount equal to one-half of all gifts or transfers from the Decedent to or for the benefit of Pierce and his family since December 1, 1980. The constructive trust and/or damages include one-half of all assets purportedly passing to Pierce and his family under the Marshall Living Trust or any other trust, one-half of all indirect transfers through transactions involving Marshall Petroleum, Inc. or other entities (and the assets of such entities), one-half of all gifts to Pierce and his family since December 1, 1980 and one-half of all transfers disguised as sales in which less than full and adequate consideration was paid for such transfers (including income) As to transfers of interests in Marshall Petroleum, Inc , the Court in equity should award Howard his share of such transfers by imposing a constructive trust on the appropriate percentage of the assets of Marshall Petroleum, Inc. free of any restrictions and free of any control by Pierce or the other shareholders Howard also requests an accounting by the Defendants who received property from Decedent for all proceeds and income earned on or arising from the property since the transfer of the property by the Decedent and recovery of one-half of such proceeds and income

47.

As to each request in this petition for a constructive trust and for the purposes of the contract between Howard and the Decedent and to prevent fraud and breach of fiduciary duty, the Court in equity should disregard the personal holding company, Marshall

A CERTIFIED COPY

ATTEST. APR 2 6 2001

BEVERLY B KAUFMAN, County Clerk

Harris County, Texas

Cuc T Lien Deputy

CUC T. LIEN

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

Petroleum, Inc., and the various restrictions placed on the assets contributed by the Decedent to this personal holding company. Howard cannot receive equal treatment with Pierce if through a constructive trust he becomes a minority shareholder in a corporation subject to oppressive restrictions and controlled by Pierce who is hostile to Howard. In order to structure an equitable remedy for Howard to treat him equally and to prevent the perpetuation of a fraud, the Court should award Howard the appropriate percentage of the assets of Marshall Petroleum, Inc. free from any and all restrictions and any control by Pierce. Howard also requests that a receiver be appointed to marshall the assets of Marshall Petroleum and to transfer the appropriate assets to Howard

48.

The Defendants are estopped from relying on the Statute of Frauds because failure to enforce the contract would result in unconscionable injury to Howard and/or unjust enrichment of the Defendants and Decedent.

PROMISSORY AND EQUITABLE ESTOPPEL

49.

In the alternative, as set forth above, Howard reasonably and detrimentally relied upon the promises and representations made to him by Decedent when Howard sold his shares of Koch Industries to the Decedent in 1980. Howard completely performed his side of the contract in reliance upon Decedent's promise and representation that Howard would be treated equally to his brother, Pierce, as regards Decedent's estate planning and property. But for Decedent's representations and promises, Howard would not have sold his Koch Industries stock to Decedent.

A CERTIFIED COPY

ATTEST APR 26 2001

BEVERLY B. KAUFMAN, County Clerk

Harris County, Texas

[signature] Deputy

CUC T. LIEN

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

50.

Decedent breached his promise and representations to Howard by transferring assets, directly and indirectly, to Pierce and his family without ultimately providing for equal gifts, transfers or bequests to Howard.

51.

Under the doctrine of promissory estoppel, Decedent was at all times legally and equitably estopped from taking action to dispose of Decedent's property in a manner contrary to his prior promises and representations to Howard.

52.

In the alternative, as set forth above, the Decedent's Estate and Defendants are estopped from denying the enforceability of the agreement because to do so would amount to a fraud. The Decedent made promises and representations to Howard to induce Howard to sell him his shares of stock in Koch Industries The Decedent made such representations and promises with no intention of treating Howard and Pierce equally. The facts developed through discovery show that the Decedent acted in an intentionally deceitful manner and the doctrine of equitable estoppel will preclude the Defendants from arguing that the Decedent's promises and representatives should not be enforced against the Defendants

BREACH OF FIDUCIARY DUTY BY DECEDENT

53.

In the alternative, as set forth above, Howard had a close, confidential relationship with his father in 1980 and trusted his father to fulfil his promises and representations. In addition, the Decedent was a director of Koch Industries and owed a strict fiduciary duty

A CERTIFIED COPY
ATTEST. APR 26 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Cuc T. Lien Deputy
CUC T. LIEN

to Howard. Also, for many years the Decedent served as trustee for Howard with regard to investments by Howard in various business ventures. Decedent also served as trustee for Howard with regard to Trust B which was established under the Property Settlement Agreement dated January 1, 1961 between Decedent and Eleanor P. Marshall. Decedent was serving in such position on December 1 and 2, 1980. Material representations and promises were made by the Decedent to Howard. Howard relied on such representations and promises to his detriment and thereby suffered damage. Howard trusted his father and believed that his father was a man of his word. The Decedent did not comply with his promises. The Decedent intentionally misled Howard in order to acquire Howard's stock in Koch Industries and took actions to conceal his wrongful conduct from Howard. The Decedent also failed to make full and frank disclosure of material facts, failed to insure that Howard was adequately represented and protected in the transaction, failed to deal fairly and in good faith with Howard, failed to pay a fair price and failed to insure that the transaction was fair Such conduct constituted a breach of fiduciary duty.

54.

Accordingly, Howard requests that the Court specifically enforce the promises made by the Decedent to Howard by imposing a constructive trust on the assets of Defendants in an amount equal to one-half of all assets transferred by the Decedent, directly or indirectly, to Pierce and his family or for their benefit since December 1, 1980 (including income and the proceeds of the sale of any transferred property) A constructive trust should be imposed on the assets held by Defendants received from Decedent (either directly or indirectly) (including the Decedent's Estate) to prevent unjust enrichment. Because the Decedent promised to treat Howard equally, all restrictions on the assets

A CERTIFIED COPY

ATTEST: APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

[signature] Deputy
CUC T. LIEN

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

transferred restricting the control or marketability of the assets should be removed by the Court as to the assets equitably passing to Howard. Alternatively, Howard seeks damages against the Decedent's estate for such breach of fiduciary duty. The constructive trust and/or damages should be in an amount equal to one-half of all assets purportedly passing to Pierce or his family under the Marshall Living Trust or any other trust, one-half of all indirect transfers through transactions involving Marshall Petroleum, Inc. or other entities (and the assets of such entities), one-half of all gifts to Pierce and his family since December 1, 1980 and one-half of all transfers disguised as sales in which less than full and adequate consideration was paid for such transfers (including income). As to transfers of interests in Marshall Petroleum, Inc. the Court in equity should award Howard his share of such transfers by imposing a constructive trust on the appropriate percentage of the assets of Marshall Petroleum, Inc. free of any restrictions and free of any control by Pierce or the other shareholders. Howard also requests an accounting by the Defendants who received property from Decedent for all proceeds and income earned on or arising from the property since the transfer of the property by the Decedent and recovery of one-half of such proceeds and income.

<center>FRAUD</center>

<center>55.</center>

Pleading in the alternative, the Decedent defrauded Howard in December of 1980. The Decedent's conduct constituted both common law and statutory fraud and Howard asserts such causes of action. From evidence uncovered since this suit was instituted, the Decedent intentionally made false promises and misrepresentations to Howard with no intention of fulfilling his promises. The Decedent made material misrepresentations and

4APETIT                              31

A CERTIFIED COPY

ATTEST. ___APR 2 6 2001___

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____Cuc T dien_____   Deputy
      CUC T. LIEN

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

promises to Howard  Howard relied on such misrepresentations and promises to his detriment when he agreed to sell his stock to the Decedent. The Decedent did not honor his promises. As a result of the Decedent's failure to abide by his promises, Howard has suffered damages.  Howard requests the imposition of a constructive trust on the assets of the Defendants to prevent unjust enrichment in an amount equal to one-half of all assets transferred, directly or indirectly, from the Decedent to or for the benefit of Pierce and his family since December 1, 1980 (including income and the proceeds of any sale of the transferred property).  Such constructive trust should be imposed on one-half of the assets of the Defendants received from Decedent (either directly or indirectly) (including the Decedent's Estate).   Because the Decedent falsely promised to treat Howard equally, all restrictions on the assets transferred restricting the control or marketability of the assets should be removed by the Court as to the assets equitably passing to Howard. Alternatively, Howard seeks damages from the Decedent's estate for fraud   The constructive trust and/or damages should be in an amount equal to one-half of all assets purportedly passing to Pierce and his family under the Marshall Living Trust or any other trust, one-half of all indirect transfers through transactions involving Marshall Petroleum, Inc. or other entities (and the assets of such entities), one-half of all gifts to Pierce or his family since December 1, 1980 and one-half of all transfers disguised as sales in which less than full and adequate consideration was paid for such transfers (including income). As to transfers of interests in Marshall Petroleum, Inc  the Court in equity should award Howard his share of such transfers by imposing a constructive trust on the appropriate percentage of the assets of Marshall Petroleum, Inc  free of any restrictions and free of any control by Pierce or the other shareholders  Howard also requests an accounting by the

4APC TIT                                         32

A CERTIFIED COPY

ATTEST: _APR 2 6 2001_____
BEVERLY B  KAUFMAN, County Clerk
Harris County, Texas

_CucTdren_____ Deputy
        CUC T. LIEN

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

Defendants who received property from the Decedent for all proceeds and income earned on or arising from the property since the transfer of the property by the Decedent and recovery of one-half of such proceeds and income.

## TORTIOUS INTERFERENCE WITH CONTRACT

### 56.

Pleading in the alternative, pursuant to his contract with Decedent, Howard had a reasonable expectation to receive lifetime or testamentary transfers of the Decedent's property and assets equal to amounts received by Pierce and his family. The actions of Marshall Defendants and Koch Defendants to wrongfully induce Decedent to attempt to transfer much of his property and assets, directly or indirectly, to Pierce constitute tortious interference with Howard's contract with Decedent. If not for the conduct of the Marshall Defendants and Koch Defendants, Decedent would not have breached his contract with Howard, and Howard would have received one-half of the property belonging to the Decedent. In addition, the actions of the Marshall Defendants and Koch Defendants in attempting to hide assets and engage in fraudulent and collusive actions to avoid the contractual obligations of the Decedent constitute tortious interference with contract rights.

### 57.

Howard seeks damages against the Marshall Defendants and Koch Defendants, and each of them for tortious interference with contract in an amount according to proof, and not less than $500 million.

## FRAUD AND FRAUDULENT TRANSFERS

### 58.

Upon information and belief, the Marshall Defendants have engaged in conduct

33

A CERTIFIED COPY

ATTEST: APR 2 6 2001

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_Cuc T Lien_ _____ Deputy
CUC T. LIEN

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

which was intended to defraud the Decedent's creditors including Howard.  Such conduct includes fraudulent transfers of assets, entering into sham transactions, breaching fiduciary duties, making misrepresentations, failing to make disclosures required of fiduciaries, creating a sham administration of the purported Marshall Living Trust in Louisiana and a sham ancillary administration of the Decedent's estate in Louisiana, filing collusive lawsuits, filing ex parte lawsuits and attempting to enforce clearly invalid documents such as the fraudulent "Renunciation" document executed by Pierce as attorney-in-fact.  Furthermore, the Marshall Defendants' duties of full and frank disclosure were breached and the Marshall Defendants made intentional misrepresentations.  Furthermore, Pierce attempted to hide his wrongful conduct by committing perjury and engaging in discovery abuse  Such acts and omissions were intended to and did harm Howard  Such actions constituted common law and statutory fraud and fraudulent transfers.  Howard requests damages from the Defendants who have participated in this conduct or benefitted by their conduct

## TORTIOUS INTERFERENCE WITH GIFT OR INHERITANCE

### 59.

Pleading in the alternative, Howard had a reasonable expectation to receive approximately one-half of Decedent's property and assets  The actions of the Koch Defendants and Marshall Defendants constitute tortious interference with Howard's inheritance rights  If not for the conduct of the Koch and Marshall Defendants, Howard would have received approximately one-half of the property belonging to the Decedent, gifts equal to those received by Pierce Marshall and his family and one-half of the property conveyed or attempted to be conveyed to the purported Marshall Living Trust  The actions of the Koch and Marshall Defendants were the proximate cause of the loss of inheritance

AAPETIT                                        34

A CERTIFIED COPY

ATTEST: APR 2 6 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_Cuc T Lien_____ Deputy
        CUC T LIEN

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

by Howard. The wrongful actions included fraud, undue influence, defamation and tortious breach of fiduciary duty Further, in the alternative, the Marshall Defendants and the Decedent tortiously interfered with a gift from Howard's mother by coercing her into an irrevocable estate plan which did not treat her sons equally. The Defendants and Decedent tortiously interfered with the gift from Howard's mother through fraud, undue influence, defamation and tortious breach of fiduciary duty. The actions of the Defendants and Decedent were intentional and fraudulent and proximately caused harm to Plaintiff.

60.

Howard seeks damages for tortious interference with inheritance rights and gift against the Koch Defendants and Marshall Defendants, and each of them, in an amount according to proof, and not less than $500 million. As to the claims relating to his mother's gift, damages are sought from the Decedent's estate and the Marshall Defendants.

CIVIL CONSPIRACY

61.

In the alternative, the conduct of Koch Defendants and Marshall Defendants described herein constituted an agreement to commit unlawful acts and/or an agreement to commit lawful acts by illegal means. These parties all collaborated to make sure that Howard was deprived of an interest in the largest assets owned by his parents and used various conflicted law firms to attempt to conceal their conduct Accordingly, the Koch Defendants and Marshall Defendants' conduct constitutes a civil conspiracy to breach fiduciary duties, defraud Howard, and tortiously interfere with Howard's inheritance rights, contract rights and a gift from his mother Pierce and the other Marshall Defendants also engaged in numerous attempts to hide Pierce's wrongful conduct by committing perjury

A CERTIFIED COPY

ATTEST. APR 26 2001

BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

[signature] Deputy

CUC T. LIEN

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

and engaging in discovery abuse. Howard seeks actual damages caused as a result of this conspiracy in an amount according to proof, and not less than $500 million.

DEFENDANTS' UNJUST ENRICHMENT

62.

In the alternative, the actions of Defendants and the Decedent were wrongful and designed to deprive Howard of his inheritance from his parents and the amounts promised to him by the Decedent. Defendants have been unjustly enriched as a result of such wrongful actions. Accordingly, Howard requests that the Court impose a constructive trust on all assets wrongfully obtained by any of the Defendants in this case (including E. Pierce Marshall, Marshall Petroleum. Inc., Elaine Marshall, Preston Marshall, E. Pierce Marshall, Jr., the Decedent's estate and others).

BREACH OF FIDUCIARY DUTY BY HARVEY SORENSEN AND FOULSTON & SIEFKIN

63.

Harvey Sorensen owed Howard fiduciary duties as trustee of the Stevens Trusts. Harvey Sorensen breached his fiduciary duties by failing to disclose to Howard that he was involved in a conspiracy to prevent Howard from receiving any stock of Marshall Petroleum, Inc or Koch Industries, Inc from his parents, that Harvey Sorensen was working for Pierce, Koch Industries, Charles Koch and others against Howard's interest when he owed duties to Howard, that he had participated in making misrepresentations to Mrs. Stevens concerning the value of the Marshall Petroleum, Inc stock, and that he was working against the interests of Howard while serving as his trustee. During discovery in this lawsuit, Howard received a document entitled "Resignation, Waiver of Accounting,

A CERTIFIED COPY
ATTEST. APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Deputy
CUC T. LIEN

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

Release and Indemnification Continuation Agreement" dated November 20, 1995, which was signed by Harvey Sorensen, E. Pierce Marshall, Finley Hilliard and Eleanor Stevens. This agreement purports to continue various indemnification and hold harmless provisions in favor of Harvey Sorensen after his resignation. This document was never disclosed or revealed to Howard until long after it was executed. Harvey Sorensen never consulted his beneficiary, Howard, about this document. This document is in violation of the trust instrument and harmful to Howard. It was a breach of fiduciary duty for Harvey Sorensen to enter into this agreement without the consent of Howard. Howard seeks damages against Harvey Sorensen, the law firm Foulston & Siefkin, and all of the Defendants named herein who participated in Harvey Sorensen's breach of fiduciary duty and conflicts of interest including efforts to conceal the wrongful conduct. The conduct was either intentional or negligent

BREACH OF FIDUCIARY DUTY BY PIERCE MARSHALL, KEN FARRAR, AS TRUSTEE, AND FINLEY HILLIARD, AS TRUSTEE

64.

As previously described, Howard is entitled to approximately one-half of all property and assets of the Decedent, which assets have been usurped and administered by Pierce Marshall, Finley Hilliard and Ken Farrar as trustees of the purported Marshall Living Trust and other trusts and entities used by them to avoid the obligations of the Decedent and his Estate. As alleged herein, Pierce has engaged in numerous acts of self-dealing and breaches of fiduciary duty to the damage of the Estate and Howard Pierce's fiduciary duties include duties to Howard under trusts created by Eleanor Stevens. Such duties have been breached Howard seeks damages for breach of fiduciary duty against Pierce and seeks to rescind all actions taken by Pierce which constituted self-dealing or a breach

A CERTIFIED COPY
ATTEST. APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Cuc T Lien Deputy
CUC T. LIEN

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

of fiduciary duty  Finley Hilliard and Ken Farrar, as trustees, apparently allowed Pierce Marshall to do whatever he pleased with the assets of the purported Marshall Living Trust and participated in transactions which benefitted Pierce to the detriment of the Decedent, his Estate, his creditors and Howard  This constituted a breach of fiduciary duties by Finley Hilliard, as trustee, and Ken Farrar, as trustee.  The other Marshall Defendants participated in or benefitted from these breaches and are liable for damages caused by such conduct. In addition, Pierce, Ken Farrar, as trustee, and Finley Hilliard, as trustee, and the other participating Defendants are liable for negligence and gross negligence.  Howard seeks damages for such conduct and return of assets to the Estate.

### BREACH OF FIDUCIARY DUTY BY DECEDENT AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

#### 65.

In the alternative, the Decedent owed fiduciary duties to Howard.  The Decedent misused his fiduciary positions to gain unlimited control of Eleanor Stevens' assets and to then use such control to coerce Eleanor Stevens to leave the bulk of her estate to Pierce. The Marshall Defendants participated in these breaches of fiduciary duties by aiding and abetting the Decedent's breaches of fiduciary duties in the transactions, purporting to speak for the Decedent and assisting the Decedent in concealing his and their actions. Decedent and The Marshall Defendants also participated in the breaches of fiduciary duties by using their positions of trust with Eleanor Stevens to misrepresent the value of her assets and to persuade her to change her estate plan in order to carry out their purposes of benefitting Pierce at Howard's expense  The conduct was either intentional or negligent.  Howard Marshall seeks damages for such conduct.

4APE1\tf                                   38

A CERTIFIED COPY

ATTEST. _____APR 2 6 2001_____
BEVERLY B  KAUFMAN. County Clerk
Harris County, Texas

_CUC T Lien_____  Deputy
CUC T. LIEN

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

66.

BREACH OF FIDUCIARY DUTY BY CHARLES KOCH AND DONALD CORDES

Charles Koch and Donald Cordes owed fiduciary duties to Howard in December of 1980. They breached their fiduciary duties to Howard in 1980 by participating in and benefitting from the false promises of the Decedent and by failing to make certain that the transaction was fair to Howard. They failed to obtain representation for Howard, failed to make full disclosure to Howard and failed to insure that the consideration paid to Howard was fair and that the promises were fulfilled. This conduct constitutes breach of fiduciary duty and Howard seeks damages for such breach.

CONTEST AND OPPOSITION TO PROBATE OF THE PURPORTED 1992 WILL AND 1993 CODICIL AND TO ANY APPOINTMENT OF PIERCE MARSHALL AS INDEPENDENT EXECUTOR

67.

On or about August 16, 1995, an application for probate was filed in this action by applicants Pierce and Finley Hilliard. Subsequently, an amended application for probate and for the appointment of Pierce as independent executor was filed by Pierce only. Then, an Application to Probate a Will as a Muniment of Title (the "Application") was filed by Pierce. The Application alleges, among other things, that prior to Decedent's death, Decedent transferred all of his assets to the purported Marshall Living Trust. The Application further alleges that, at the time of Decedent's death, Decedent left a purported written last will and testament dated December 22, 1992, (the "1992 Will"), and that Decedent also left a purported codicil to the will dated June 11, 1993 (hereinafter the "1993

A CERTIFIED COPY
ATTEST APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Cuc T Lien Deputy
CUC T. LIEN

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

Codicil"). The Application seeks to submit for probate the purported subject 1992 Will and 1993 Codicil.

68.

Excepting the allegations in the Application setting forth the Decedent's name, age and domicile, Howard denies generally and specifically all other allegations contained in the Application and demands strict proof thereof.

69.

Howard contests and opposes probate of the purported 1992 Will and 1993 Codicil and contests and opposes any appointment of Pierce as a personal representative of the Estate.

70.

Howard asserts that the purported 1992 Will and 1993 Codicil are invalid as Decedent did not execute them with the formalities and solemnities and under the circumstances required by Texas law

71.

In the alternative, and without waiving the preceding allegations, Howard asserts that the Decedent executed the purported 1992 Will and 1993 Codicil as the result of undue influence exerted over the Decedent by Defendants and/or others acting in concert with Defendants · Howard asserts that at the time the purported 1992 Will and 1993 Codicil were executed, and for many years prior thereto, a fiduciary and confidential relationship existed between Decedent, Pierce, and other of the Defendants named herein, that at times relevant to this proceeding, the Decedent was in a weakened mental and physical condition, and was susceptible to the exertion of undue influence by Defendants and/or

A CERTIFIED COPY
ATTEST: APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Deputy
CUC T. LIEN

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

others acting in concert with them, that at the time the purported 1992 Will and 1993 Codicil were executed, and for many years prior thereto, Defendants and/or others acting in concert with them, had unlimited opportunities to exert undue influence upon Decedent; that at times relevant to this proceeding, Defendants and/or others acting in concert with them, embarked on a concerted course of conduct to gain control of Decedent's assets, person and Estate; and that Defendants and/or others acting in concert with them, were directly involved in the planning, preparation, and execution of the purported 1992 Will and 1993 Codicil. Howard is informed and believes, and thereto alleges, that Defendants and/or others acting in concert with them, did in fact exert undue influence over Decedent, and that said undue influence operated to subvert and overpower the Decedent's mind at the time the purported 1992 Will and 1993 Codicil were executed, resulting in a will that the Decedent would not have executed but for such undue influence.

72.

In the alternative, Howard asserts that during various time periods during the last years of the Decedent's life, Decedent lacked capacity to execute a will or to conduct his business. In fact, a temporary guardianship proceeding was commenced by Pierce. Howard demands strict proof that the Decedent had testamentary capacity at the time the 1992 Will and 1993 Codicil were executed

73.

In the alternative, Howard alleges that if the Decedent did in fact freely and voluntarily execute the purported 1992 Will and 1993 Codicil, that such instruments were a breach of Decedent's prior contractual agreement with Howard, and that Decedent was, at all times, legally and equitably estopped from leaving his property in a manner which did

4APETIT                            , 41

A CERTIFIED COPY

ATTEST: ___APR 2 6 2001___

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

___Cuc T Lien___ Deputy
CUC T. LIEN

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

not treat his sons (and their families) equally.  A constructive trust should be imposed on the assets passing to any beneficiaries under the purported 1992 Will and 1993 Codicil.

### 74.

In the alternative, Howard asserts that the 1992 Will and 1993 Codicil were executed by the Decedent at a time when the Decedent was experiencing an irrational belief of facts and circumstances concerning Howard Marshall that were not accurate or true   Such irrational beliefs caused the Decedent to execute documents which he otherwise would not have signed including the 1992 Will and 1993 Codicil

### 75.

For the reasons set forth above, all purported wills and codicils executed by the Decedent since 1979 are invalid.  Howard requests a declaratory judgment finding that all purported wills and codicils of the Decedent executed since the Decedent's will executed in 1979 and offered for probate are invalid

### THE TRUST AND ALL AMENDMENTS THERETO ARE INVALID

### 76.

Howard contends that the purported Marshall Living Trust and all amendments thereto are invalid and that no portion of Decedent's Estate, property  or assets may be transferred or otherwise "pour over" from the Estate to any trust   Howard contends that the purported Marshall Living Trust and all amendments thereto are invalid for each of the reasons set forth below.

44PE11T

42

A CERTIFIED COPY

ATTEST: APR 2 6 2001
_____
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____  Deputy
CUC T. LIEN

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

77.

Howard asserts that the purported Marshall Living Trust and amendments thereto, if in fact knowingly executed by the Decedent, were executed as a result of undue influence and duress exerted over the Decedent by Defendants and/or others acting in concert with them, who were in a fiduciary and confidential relationship with the Decedent. Howard will show, among other things, that Defendants and/or others acting in concert with them, embarked on a concerted course of conduct to gain complete control of Decedent's assets, estate, and person in order to prevent Decedent from amending his testamentary documents. Thus, Howard will show, among other things, that (i) since 1980 Defendants and/or others acting in concert with them, exerted undue influence over the Decedent and that his testamentary instruments and the purported Marshall Living Trust and all amendments thereto were executed as a result of such undue influence Such undue influence and duress existed and was exerted by Defendants and/or others acting in concert with them; such undue influence effectively operated so as to subvert or overpower the mind of the Decedent at the time of the execution of the purported Marshall Living Trust and all amendments thereto in question; Decedent would not have executed the purported Marshall Living Trust instrument and all amendments thereto but for such undue influence and duress.

78.

In the alternative, Howard alleges that if the Decedent did in fact freely and voluntarily execute the purported Marshall Living Trust instrument, that the irrevocable trust instrument dated July 13, 1994, is a breach of Decedent's prior contractual agreement with Howard, and that Decedent was, at all times, legally and equitably estopped from creating

4APETIT

A CERTIFIED COPY
ATTEST. APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Deputy
CUC T IEN

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

trusts or making gifts which did not ultimately treat his sons equally. In 1980, the *Decedent* promised Howard that he would treat his sons equally in his estate plan (including their families), and would do so in exchange for Howard selling his Koch Industries stock to Decedent at a price well below what Howard would have been able to obtain and in fact had been offered. Howard relied upon the Decedent's promises to his detriment and Howard fully performed his side of the transaction by delivering his shares of Koch Industries stock to the Decedent. Accordingly, at all relevant times after 1980, the *Decedent was legally and equitably estopped from making the purported Marshall Living Trust irrevocable and the assets which should have been transferred to Howard under the contract should be held in constructive trust for Howard. In addition, a constructive trust should be imposed on one-half of the assets conveyed directly or indirectly to Pierce Marshall or his family from the Decedent or the purported Marshall Living Trust, after December of 1980.*

### 79.

In the alternative, Howard contends that at the time that Decedent executed the purported Amendment and Restatement to the Trust instrument in July of 1994, the Decedent did not know or understand the terms of the instrument or its legal effect. Howard believes that as of July 13, 1994, the Decedent could not read due to poor eyesight. Howard will further show that the signature on the purported Amendment and Restatement to the Trust in July of 1994 is illegible, and is so located on the instrument so as to indicate that Decedent could not see what he was signing. Further, Howard has reason to believe, and does believe, that other irregularities exist regarding both Decedent's execution of the purported Amendment and Restatement to the Trust

44PETIT                                                44

A CERTIFIED COPY

ATTEST APR 2 6 2001

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

CUC T. LIEN                    Deputy
CUC T. LIEN

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

Instrument in July of 1994 and the purported notarization of Decedent's signature. Further, the instrument does not contain Decedent's initials indicating his understanding and assent to the various provisions. The Decedent's diminished capacity or, alternatively, lack of capacity caused or contributed to the execution of a document the Decedent did not understand.

80.

In the alternative, Howard alleges that the purported Marshall Living Trust instrument and all amendments thereto, if in fact knowingly executed by Decedent, were executed as a result of actual or constructive fraud, either in the inducement or otherwise, perpetrated on the Decedent by Defendants and/or others acting in concert with them, who were in a fiduciary and confidential relationship with Decedent. Howard will show, among other things, the events alleged above, and will further show that if, in fact, Decedent executed the purported Marshall Living Trust and all amendments thereto, Decedent did so while under a mistaken impression as to the contents of the instrument and as to the state of Decedent's financial affairs. Such fraud effectively operated so as to subvert or overpower the mind of the Decedent at the time of the execution of the purported Marshall Living Trust instrument and all amendments thereto, and the Decedent would not have executed those instruments but for that fraud.

81.

In the alternative, Howard asserts that the purported Marshall Living Trust is invalid because the Trust and all amendments thereto were executed by the Decedent at a time when the Decedent was experiencing an irrational belief of facts and circumstances concerning Howard that were not true or accurate. Such irrational beliefs caused the

4APETIT                                45

A CERTIFIED COPY

ATTEST: ___APR 2 6 2001___

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____*CUC T Lien*_____ Deputy
        CUC T. LIEN

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

Decedent to execute documents which he otherwise would not have signed including the purported Marshall Living Trust and the amendments thereto.

82.

In the alternative and upon information and belief, the purported 1994 Marshall Living Trust was not properly funded and terminated. As a result, some or all of the Decedent's assets pass by intestacy.

83.

Further, in the alternative, Pierce, Finley Hilliard, as trustee, Edwin Hunter and other Defendants attempted to change the situs of the purported Marshall Living Trust to Louisiana. Such parties also have admitted that Louisiana law applies to the purported Marshall Living Trust The purported Marshall Living Trust is invalid under the laws of the State of Louisiana. Howard requests a declaration that the Marshall Living Trust is invalid and requests a declaration of his forced heirship rights and an award of his forced heir's share Furthermore, Howard requests that the Court declare that the purported Marshall Living Trust is invalid under the laws of the State of Louisiana relating to trusts, transfers of property in trust, disposition of property and such other provisions of Louisiana law which may be presented to the Court

HOWARD MARSHALL REQUESTS THAT THE
COURT DENY THE SUBJECT APPLICATION AND
THAT THE COURT IMPOSE A CONSTRUCTIVE TRUST

83.

For the foregoing reasons, Howard requests that the Court deny the subject Application for probate and any application to probate any purported will of the Decedent executed after 1979 Howard further requests the Court to impose a constructive trust

A CERTIFIED COPY
ATTEST: APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Cuc T. Lien Deputy
CUC T. LIEN

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

upon any and all property of Decedent which has heretofore been transferred to the purported Marshall Living Trust, to Pierce, Elaine Marshall, Preston Marshall, E. Pierce Marshall, Jr., Marshall Petroleum, Inc., Finley Hilliard, Ken Farrar or others as trustees or otherwise, for the benefit of Howard.  It would be unconscionable for Pierce to obtain or exercise control over any of Decedent's property if it is determined that Pierce, and/or others acting in concert with him, breached fiduciary duties, exerted undue influence and duress over Decedent and/or defrauded the Decedent to prevent Decedent from amending his testamentary documents, and to attempt to insure that Pierce received Decedent's entire Estate to the exclusion of other rightful and intended heirs  Howard will further show that, unless a constructive trust is imposed on the property (if any) which has already passed to the purported Marshall Living Trust, Marshall Petroleum, Inc. or its shareholders, or which might otherwise pass to Pierce or his family outright or in trust, that Pierce and others will be unjustly enriched, at the expense of Howard and of other rightful and intended heirs  In addition, the breach of the Decedent's promises and representations to Howard by the Decedent gives rise to unjust enrichment of the Defendants (including Elaine Marshall, Preston Marshall and E. Pierce Marshall, Jr ) and unconscionable injury to Howard.

### REQUEST FOR A JUDICIAL DECLARATION THAT THE PURPORTED MARSHALL LIVING TRUST AND ALL AMENDMENTS THERETO ARE VOID AND THAT ALL PROPERTY OF THE ESTATE PASSES BY INTESTACY

84.

A dispute has arisen and exists between Howard and Pierce concerning the validity

A CERTIFIED COPY

ATTEST. APR 2 6 2001

BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

_____ Cuc T dres ) _____ Deputy
CUC T. LIEN

of the purported Marshall Living Trust instrument and all amendments thereto and as regards the disposition of Decedent's Estate.

85.

As alleged more fully hereinabove and in the alternative. Howard contends that the J. Howard Marshall, II Living Trust and all amendments thereto are void and invalid; that any transfer to such purported Trust is void; that any bequest under the purported 1992 Will is to a void trust and therefore fails; that no alternative residuary gift is set forth in the purported 1992 Will and 1993 Codicil; and that all of Decedent's Estate passes by intestacy.

86.

Further, in the alternative, Howard contends that Decedent, at all times since 1980, was legally and equitably estopped from creating the purported Marshall Living Trust, the purported 1992 Will and 1993 Codicil by reason of Decedent's prior promises and agreement with Howard Marshall as regards Decedent's estate plan, which promises and agreement were relied on by Howard in connection with Howard's sale of his Koch Industries stock to Decedent.

87.

Further, in the alternative and without waiving the preceding allegations, upon information and belief, the Marshall Living Trust is a sham which has been used by Pierce and other Defendants to perpetrate a fraud on Howard and others.

88.

Howard requests a judicial declaration as to the validity of the purported Marshall Living Trust instrument and all amendments thereto, and specifically, Howard requests a

A CERTIFIED COPY
ATTEST. APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas
Cuc T Lien Deputy
CUC T. LIEN

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

declaration that the J. Howard Marshall, II Living Trust is void, and that any bequest under the purported will to such purported Marshall Living Trust lapsed, and that such invalidly bequeathed property of the Estate passes by intestacy. Further, Howard requests that the Court declare that Howard, Vickie Marshall and Pierce are the only heirs of the Decedent. Further, Howard requests a declaration that transactions since 1994 involving the invalid Marshall Living Trust are void because the trust was invalid and the many transactions involved assets which were not held in such trust.

89.

APPLICATION TO PROBATE DECEDENT'S WILL

Howard hereby requests that the Court admit to probate the Last Will and Testament of the Decedent dated December 3, 1979 ("1979 Will") The original Will is believed to be in the possession and control of one of the Defendants and the filing of such instrument should be compelled by the Court If the original Will is not filed, Howard seeks to probate such Will based on a copy of such Will which has been produced in discovery The contents of such Will, including the dates and the executor named, are set forth in the copy filed with the Court Howard cannot produce the original Will because it has never been in his possession All heirs of the Decedent, his wife, Vicki Marshall, and sons, Howard and Pierce, are parties to this proceeding In connection with this application for probate, Howard alleges as follows

1. The applicant is J. Howard Marshall, III and he is domiciled in Los Angeles County, California.

A CERTIFIED COPY

ATTEST. APR 26 2001

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

Deputy

CUC T. LIEN

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

2. The Decedent was J. Howard Marsnall, II and he died on or about August 4, 1995, in Houston, Harris County, Texas. At the time of his death; Decedent was ninety years old and was domiciled in Harris County, Texas at the time of his death.

3. Venue is proper in the Court because the Decedent was domiciled is Harris County, Texas.

4. The Decedent owned property and claims of substantial value.

5. The last valid Will of the Decedent was dated December 3, 1979 and names Bettye B. Marshall, as independent executrix. Bettye B Marshall is deceased and the only successor named is E. Pierce Marshall who is disqualified to serve for the reasons set forth in this petition. A qualified personal representative should be appointed by the Court.

6. No child was born or adopted by the Decedent after making his will

7. The Decedent was divorced once from Eleanor Stevens in 1960 or 1961.

8. The Will creates a charitable trust. Neither state nor government agency of the state is named as a devisee in the Will

Howard respectfully requests that citation be served as required by law, that the 1979 Will be admitted to probate and that letters testamentary be issued to a qualified personal representative. Howard is offering the 1979 Will for probate in good faith and with just cause and is entitled to recover his attorney fees

DISCOVERY RULE

90.

Many of the causes of action set forth herein did not accrue until Decedent's death. In any event and in the alternative, the Decedent and Defendants fraudulently concealed their wrongful conduct. Plaintiff did not discover the facts relating to his causes of action

A CERTIFIED COPY

ATTEST: APR 26 2001

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

[signature] Deputy

CUC T. LIEN

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

until shortly before (or in some cases after) he filed suit. Plaintiff's fiduciaries have never made full and frank disclosure to him. In fact, Defendants tried to conceal their wrongful conduct in the discovery process.

<u>REQUEST FOR ACCOUNTING</u>

91.

Howard hereby requests an accounting from all Defendants who are currently a trustee and all Defendants who have ever been a trustee of the Eleanor P Stevens Irrevocable Gift Trust dated April 27, 1989, the Eleanor P Stevens Irrevocable Gift Trust No. Two dated April 27, 1989, the Eleanor P Stevens Revocable Gift Trust dated March 22, 1992, the Eleanor Pierce Marshall Living Trust dated April 27, 1989, the J Howard Marshall, II Living Trust, the Marshall Grandchildren's Trust for the benefit of E. Pierce Marshall, Jr., the Marshall Grandchildren's Trust for the benefit of Preston Marshall, the Marshall Museum & Library Trust (formerly the Marshall Museum of Racing Trust), the Marshall Petroleum, Inc. Stock Holding Trust, the Bettye B Marshall Living Trust (also sometimes referred to as the Bettye B. Marshall Estate Trust), the J Howard Marshall, II Marital Trust No Two, the E. Pierce Marshall Family Trust created under the Bettye B. Marshall Trust Indenture dated October 30, 1990, the Charitable Lead Trust, the J. Howard Marshall, II Liquidating Trust No Two, the J Howard Marshall, II Liquidating Trust No. One. Howard also requests an accounting of Marshall Petroleum, Inc. The accountings requested herein are from the inception of the trusts and Marshall Petroleum, Inc. until the time of trial

94.

The actual damages sought will not exceed $1 billion

51

A CERTIFIED COPY

ATTEST. APR 2 6 2001

BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

_Cuc T Lien_____ Deputy
CUC T. LIEN

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

PUNITIVE DAMAGES

95.

It is believed that many of the actions of the Marshall Defendants and the Koch Defendants were intentional and malicious. Accordingly, Howard Marshall seeks punitive damages.

PRE-JUDGMENT AND POST-JUDGMENT INTEREST

96.

Howard hereby seeks pre-judgment and post-judgment interest on the amounts awarded hereunder

ATTORNEY FEES

97.

Howard hereby requests that he be awarded his attorney fees and costs.

WHEREFORE, J. Howard Marshall, III prays as follows

(a) that the contract between Howard and Decedent be specifically enforced by the imposition of a constructive trust on the assets held by the Defendants as set forth above, or, alternatively, that damages be awarded for breach of contract as set forth above;

(b) alternatively, that the promises made by the Decedent to Howard be specifically enforced against the Defendants by the imposition of a constructive trust on the assets held by the Defendants as set forth above, or alternatively, that damages be awarded for breach of such promises as set forth above;

(c) alternatively, that the Court impose a constructive trust on the Defendants' assets to prevent unjust enrichment and as remedy for breach of fiduciary duty and fraud

A CERTIFIED COPY APR 26 2001
ATTEST:
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas
Deputy
CUC T. LIEN

(statutory and common law) as requested herein; or, alternatively, that damages be awarded for breach of fiduciary duty and fraud as set forth above;

(d) that all restrictions on the assets transferred restricting the control or marketability of the assets be removed by the Court as to the assets equitably passing to Howard and that a constructive trust be imposed directly upon the assets of the personal holding company, Marshall Petroleum, Inc.;

(e) that the subject Application filed by Pierce be denied; and the Application for Probate filed by Howard be granted, the 1979 Will be admitted to probate and letters of administration be granted to a qualified administrator appointed by the Court.

(f) that the Court issue judicial declarations concerning the purported trusts, wills and codicils of Decedent and the heirs of the Decedent as requested above In the alternative, declare Howard Marshall's forced heirship rights and award his forced heir's share,

(g) that Howard recover all income and proceeds generated by the property held in constructive trust;

(h) that an accounting of all assets of the Estate and of all property and assets of Decedent heretofore transferred to Defendants, of all income and proceeds generated by the property held in constructive trust be ordered;

(i) that a receiver be appointed to distribute assets from the Defendants as requested above,

(j) that the accounting requested be ordered;

(k) that Howard be awarded actual and punitive damages as requested herein,

A CERTIFIED COPY
ATTEST: APR 26 2001
BEVERLY B KAUFMAN, County Clerk
Harris County, Texas

Cuc T Lien Deputy
CUC T. LIEN

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

(l) that Howard recover his costs, expenses and disbursements in bringing this action, including reasonable attorneys' fees;

(m) that Howard be awarded pre-judgment and post-judgment interest on all amounts awarded; and

(n) for such other and further Orders and relief as the Court may deem proper

Respectfully submitted,

LAWTER & LAWTER

By: ______________________
Jack W. Lawter, Jr.
State Bar No. 12061300
Dianne W Lawter
State Bar No. 21356575
5615 Kirby, Suite 930
Houston, Texas 77005
(713) 522-9400/(713) 522-5556 (fax)

GABRIEL, HERMAN & PERETZ
Avi S. Peretz
Dean B. Herman
1800 Century Park East
Los Angeles, California 90067
(310) 286-1300 / (310) 286-1331

ATTORNEYS FOR J. HOWARD MARSHALL, III

FILED

01 MAY -1 PM 6:30

A CERTIFIED COPY

ATTEST: APR 26 2001
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

______________________ Deputy
CUC T. LIEN